Michelle BROYLES, et al., Plaintiffs,

v.

U.S. GYPSUM CO. and Union Carbide
Corp., Defendants.

Civ.A. No. 1:00CV868.

United States District Court,
E.D. Texas,
Beaumont Division.

July 6, 2001.

Joseph Charles Blanks, Doucette, TX, for plaintiff.

Lawrence Louis Germer, Germer & Gertz, Beaumont, TX, for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

Before the Court is Plaintiffs' Motion for Mandatory Abstention and Remand of Removed Action, or, Alternatively, Motion for Remand and for Discretionary Abstention; and, Plaintiffs' two Motions to Sever Defendants Armstrong World Industries, Inc., and Babcock & Wilcox. The Court having reviewed the motion for abstention and the response on file is of the opinion that the motion be GRANTED. The action as removed, however, only presents Defendants United States Gypsum Co. and Union Carbide Corp. Because Armstrong World Industries, Inc., and Babcock & Wilcox are not property before this Court as defendants in the removed action, the motions to sever must be DENIED.

### I. Background.

The underlying Texas state court case is one of personal injury based on exposure to asbestos. The plaintiffs, Michelle Broyles, acting individually and as next friend to Haylee and Tyler Broyles, and her spouse, David Broyles, assert that David Broyles was exposed to dust containing asbestos fiber in his workplace, which caused him to contract peritoneal mesothelioma. The lawsuit was brought in the 58th Judicial District Court of Jefferson County, Texas, in 1997 under cause number A–157259 (having been consolidated with cause number B–156660) asserting that nearly one hundred named defendants either made, sold, marketed, brokered, imported, specified or used asbestos-containing products in Texas which were defective and unreasonably dangerous as designed, manufactured and marketed. The Broyles' lawsuit is based on claims of neg-

ligence, gross negligence, fraud, deceit, misrepresentation, battery and defective products theories under Texas state law. There were no federal claims in the lawsuit, which asserted that Mr. Broyles had contracted the mesothelioma less than two years before the filing of the suit.

After proceeding in state court for some time, the plaintiffs and certain of the defendants entered into a settlement agreement brokered by the Center for Claims Resolution, Inc. (CCR), a claim handling corporation created by several former asbestos-producing companies. CCR's settlement on behalf of United States Gypsum (USG), Union Carbide and Armstrong World Industries (Armstrong) provided that the settling defendants would pay the plaintiffs $250,000.00 by December 1, 2000. The plaintiffs allege that those defendants did not pay pursuant to the settlement agreement. The plaintiffs therefore sought enforcement from the Texas state court.

Armstrong filed a voluntary petition for relief under chapter 11 of title 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware on December 6, 2000. On December 15, 2000, defendants USG and Union Carbide removed their portion of the case relating only to the claims and/or causes of action raised by the settlement enforcement proceeding, while specifying that they were not removing any proceedings related to the asbestos personal injury claims or any other matter pending in the state court case. They founded that removal on the plaintiffs' assertion of joint and several liability between USG, Union Carbide and Armstrong pursuant to the CCR agreement. Armstrong is not one of the parties in removal. USG and Union Carbide claim the right of removal under 28 U.S.C. § 1452(a) and 28 U.S.C. § 1334(b), on the basis that the removed action is one "aris-

ing under title 11, or arising in or related to a case under title 11."

The plaintiffs seek to return the case to Texas state court under the doctrines of mandatory abstention or, alternatively, discretionary abstention and/or equitable remand. They are willing to sever certain defendants in bankruptcy to achieve that end. Such severance, however, must occur in Texas state court because those defendants are not before this Court.

## II. Jurisdiction.

Authority for removal to federal court in this case resides under 28 U.S.C. § 1452(a), which provides:

> A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim under section 1334 of this title.

Title 28 U.S.C. § 1334 determines bankruptcy jurisdiction and provides:

> (a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

> (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district court shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

This case will fall under § 1334 if it is one of the following: (1) a "case under title 11"; (2) a proceeding "arising under" title 11; (3) a proceeding "arising in" a case under title 11; or (4) a proceeding

"related to" a case under title 11. *See Thomas v. R.J. Reynolds Tobacco Co.,* 259 B.R. 571, 575 (S.D.Miss.2001). To determine bankruptcy jurisdiction, it is unnecessary to distinguish between the categories; it is only necessary to determine whether a matter is at least "related to" the bankruptcy. *See Id.* (citing *In re Wood,* 825 F.2d 90, 93 (5th Cir.1987)).

■ A proceeding is "related to" a bankruptcy case if the proceeding could have been commenced in federal or state court independently of the bankruptcy case, and if the outcome of that proceeding could have an impact on the estate being administered in bankruptcy. *Id.* Further, "an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively), and which in any way impacts upon the handling of the bankrupt estate." *Id.* (citing *In re Majestic Energy Corp.,* 835 F.2d 87, 90 (5th Cir.1988)).

■ The Court finds this action is at least "related to" the bankruptcy case because any result may have the effect of either reducing or enlarging the property of the bankruptcy estate. Therefore, this Court has subject matter jurisdiction over this case under 28 U.S.C. § 1334.

## III. Abstention and Equitable Remand.

Notwithstanding this Court's subject matter jurisdiction, § 1334 provides for both mandatory and discretionary abstention in the face of a case which is removed to federal court but which remains founded in state law. Further, 28 U.S.C. § 1452(b) permits a federal district court to remand a claim related to a bankruptcy case which has been removed to federal jurisdiction on any equitable ground.

## A. Mandatory Abstention.

■ Mandatory abstention is required as follows:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

*See* 28 U.S.C. § 1334(c)(2). Therefore, mandatory abstention is required in cases involving state-law claims for which the sole basis of bankruptcy jurisdiction is "related to" jurisdiction, even for cases which have been removed to federal court. *See In re Southmark Corp.,* 163 F.3d 925, 929 (5th Cir.1999), *cert. denied,* 527 U.S. 1004, 119 S.Ct. 2339, 144 L.Ed.2d 236 (1999); *Thomas,* 259 B.R. at 575. Mandatory abstention applies only to non-core proceedings "related to a case under title 11," but not "arising under title 11" or "arising in a case under title 11." *See In re Gober,* 100 F.3d 1195, 1206 (5th Cir.1996).

As other federal courts have therefore summarized, the following conditions must be met to invoke mandatory abstention:

1. A motion has been timely filed requesting abstention;

2. The cause of action is essentially one that is premised on state law;

3. The proceeding is non-core or related to the bankruptcy case;

4. The proceeding could not otherwise have been commenced in federal court absent the existence of the bankruptcy case; and

5. The proceeding has already been commenced and can be timely adjudicated in a state court forum.

*See Thomas,* 259 B.R. at 576; *In re McCray,* 209 B.R. 410, 414 (Bankr. N.D.Miss.1997). This Court will apply the same framework in analysis. The major point in contention between the parties is whether this case is a "core" or "non-core" matter subject to mandatory abstention.

█ First, this case was removed by USG to federal court on December 15, 2000. Plaintiffs timely filed their motion for mandatory abstention on January 5, 2001.

Second, the underlying causes of action in the case are all founded in state law and were pursued in Texas state courts since 1997 without any implication of matters requiring federal court review. The plaintiffs' sixth amended complaint, filed June 1, 2000, remains founded exclusively in state law causes of action. The settlement agreement controversy which prompted USG and Union Carbide to remove their dispute to federal court is an outgrowth of that state-based lawsuit and is itself founded in state law.

Third, this is a non-core matter only related to a bankruptcy proceeding. As one district court recently described core versus non-core matters:

> "Arising under" jurisdiction involves causes of action created or determined by a statutory provision of title 11. "Arising in" jurisdiction is not based on a right expressly created by title 11, but is based on claims that have no existence outside bankruptcy. "Related to" jurisdiction is present in a proceeding if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Core proceedings are matters or proceedings that "are an integral part of the bankruptcy case," including "other

proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor ... relationship." "Related-to" matters are those which, because they are peripheral to the concerns of the bankruptcy case and based on extrinsic sources of law, require mandatory abstention.

*See WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.,* 75 F.Supp.2d 596, 606 (S.D.Tex.1999) (internal citations omitted).

█ The *WRT Creditors* court summarized and noted that, since the U.S. Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), courts have treated state law claims for pre-bankruptcy petition breaches of contract as non-core matters. *Id.* at 609–611. Where all of a case's alleged tortious conduct and breaches of contract occurred pre-petition, the case is non-core to the bankruptcy proceeding.

█ This case is only "related to" a bankruptcy proceeding. It does not "arise under title 11" nor "arise in a case under title 11." The case removed to federal court does not directly involve Armstrong nor the liquidation of its assets nor affect the debtor-creditor relationship. Instead, the case seeks Texas state court enforcement of a settlement agreement entered into between the parties pursuant to the 1997 asbestos personal injury lawsuit. The causes of action pursued in the underlying case are state law claims of personal injury through fraud, negligence, and other allegations sounding in tort. As such, they are not core issues as defined in 28 U.S.C. § 157. Specifically, "liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution *in a case under title 11*" are

excluded from the definition of "core" proceedings in bankruptcy. *See* 28 U.S.C. § 157(b)(2)(B) (emphasis added). The cause which falls under title 11 is Armstrong's petition for bankruptcy in Delaware, not the instant case removed to this court. Although USG and Union Carbide argue that the "joint and several liability" assertions by the plaintiffs intertwine their case with Armstrong's bankruptcy proceeding to Armstrong's prejudice, the Bankruptcy Court for the District of Delaware will oversee Armstrong's interests. Further, although USG and Union Carbide assert in their response that Armstrong is a defendant in the removed action, that is not the case. The only defendants in removal are USG and Union Carbide.

Additionally, the exclusion of certain non-core proceedings from mandatory abstention under 28 U.S.C. § 157 is inapplicable here. "Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2)." *See* 28 U.S.C. § 157(b)(4). Although such non-core proceedings include those which are founded in tort, § 157(b)(2)(B) applies to "a case under title 11." The instant case, which primarily seeks enforcement of a settlement agreement resulting from a tort action, is not under title 11, but only related to the Armstrong bankruptcy petition.

Therefore, the third factor in the mandatory abstention analysis has been satisfied.

■ Fourth, the plaintiffs' claims are founded solely in Texas state law. They implicate no federal claim or question. The plaintiffs are Texas citizens and one or more of the nearly one hundred defendants are also Texas citizens, so federal diversity jurisdiction cannot be invoked. Therefore, absent Armstrong's filing in bankruptcy, this action could not have been brought in federal court.

■ Fifth, as previously stated, the action was commenced in 1997 in the 58th Judicial District Court of Jefferson County, Texas. The case has been well-developed in that court. A settlement agreement was entered by the parties with the current status of the case being the plaintiffs' request to that court to enforce the agreement. The proceeding would virtually start over again if pursued in federal court. The most timely adjudication of the claim would be in the state court forum.

The factors requiring mandatory abstention under § 1334 have been met. This Court will abstain from hearing the case, but will continue with the alternative discretionary abstention and remand analysis.

## B. Discretionary Abstention under § 1334 and Equitable Remand under § 1452.

■ Discretionary abstention in bankruptcy proceedings is provided for as follows:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11, or arising in or related to cases under title 11.

*See* 28 U.S.C. § 1334(c)(1). Therefore, under the discretionary or permissive abstention doctrine, courts have broad discretion to abstain from hearing state law claims whenever appropriate in the interest of justice, or in the interest of comity with State courts or respect for State law. *See In re Gober,* 100 F.3d at 1206 (citing also *In re Wood,* 825 F.2d at 93). A federal district court may abstain at its discretion from deciding core or non-core proceed-

ings under § 1334(c)(1) if such interests so require. *Id.*

Similarly, a federal court may equitably remand claims related to bankruptcy cases:

> The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

*See* 28 U.S.C. § 1452(b). Therefore, a federal district court or bankruptcy court may find that remand is appropriate in a case removed on bankruptcy grounds whether it is "core" or "non-core" if there is any equitable ground for doing so. *See Chickaway v. Bank One Dayton, N.A.,* 261 B.R. 646, 650 (S.D.Miss.2001) (citing *In re Southmark Corp.,* 163 F.3d at 929).

Because the discretionary abstention and equitable remand doctrines are similar, there is an overlap between the two regarding factors for a court to consider. These include:

(1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention;

(2) extent to which state law issues predominate over bankruptcy issues;

(3) difficult or unsettled nature of applicable law;

(4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding;

(5) jurisdictional basis, if any, other than § 1334;

(6) degree of relatedness or remoteness of proceeding to main bankruptcy case;

(7) the substance rather than the form of an asserted core proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden of the bankruptcy court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of nondebtor parties;

(13) comity; and

(14) the possibility of prejudice to other parties in the action.

*See Searcy v. Knostman,* 155 B.R. 699, 710 (S.D.Miss.1993); *Chickaway,* 261 B.R. at 651–52; *Thomas,* 259 B.R. at 578–79. The Court will discuss the most relevant factors.

It is difficult to see what adverse effect would occur to the efficient administration of the Armstrong bankruptcy estate if this Court abstains or remands. The U.S. Bankruptcy Court for the District of Delaware will retain jurisdiction over the core issues in that bankruptcy case. Additionally, Armstrong can be severed from the state law claims in the plaintiffs' case. In fact, the plaintiffs have entered motions to sever Armstrong as well as another defendant, Babcock & Wilcox, also apparently in bankruptcy proceedings, to permit the state law claims go forward in state court while the bankruptcy court administers the bankruptcy actions. It is, therefore, feasible to do so although those defendants are present only in the case remaining before the Texas state court

and a severance will have to occur in that forum.

The state law claims in the removed action relate to respective liability between three entities, brokered by a corporation established for claims settlement, out of nearly one hundred defendants in the asbestos lawsuit. The underlying suit involves several Texas state causes of action. The dispute removed to this Court is also founded in state law and is only peripherally related to Armstrong's bankruptcy petition. The case has been under the Texas state court jurisdiction since June of 1997. Defendant Armstrong filed for relief under chapter 11 on December 6, 2000.[1] In the context of the Broyles' lawsuit, the state law issues predominate.

While state law issues such as these are hardly difficult or complex, their application to USG and Union Carbide as part of a large and broad variety of defendants, each with a different role in the asbestos personal injury action, does present a somewhat novel aspect more appropriate to state court adjudication. Certainly, the 58th Judicial District Court of Jefferson County, Texas, has invested almost four years of effort in this case and would be much more closely attuned to its administration under Texas law. It is also clear that there is no other jurisdictional basis for removal other than § 1334. In the interest of comity, the Texas court should continue to hear the case.

Finally, the federal district court in Beaumont consists of three district judges and two magistrates. This Court alone currently has approximately four hundred civil and over one hundred twenty criminal cases pending, including this one. The other judges are similarly burdened. While the addition of one case is not insurmountable, with the availability of the Texas state judges in Beaumont, it can be a burden the federal court should not be required to take in a four year old case. Further, the likelihood that the defendants' interest in removal was to shop for a preferred forum is increased because it was USG and Union Carbide who effected the removal—not Armstrong.

In summary, this Court would exercise its discretion to abstain from hearing the case under § 1334 or would equitably remand the case under § 1452 if mandatory abstention were not required.

### IV. Conclusion.

Because abstention and remand to state court is appropriate under each of the three doctrines examined, and because mandatory abstention is in fact required, it is, therefore,

ORDERED, that Plaintiffs' Motion for Mandatory Abstention and Remand of Removed Action, or, Alternatively, Motion for Remand and for Discretionary Abstention is hereby GRANTED and the Court will abstain from hearing the case as mandated under 28 U.S.C. § 1334(c)(2). It is, further,

ORDERED, that Plaintiff's two Motions to Sever Defendants are DENIED. It is, further,

ORDERED, that all other motions in this case are DENIED as MOOT. It is, further,

ORDERED, that this case is REMANDED to the Texas state court from whence it came.

---

1. The record does not reflect when Defendant Babcock & Wilcox filed in bankruptcy nor on what basis. However, USG's removal action was based only on Armstrong's bankruptcy action.