Sherman DAVIS, Plaintiff,

v.

LIFE INVESTORS INSURANCE
COMPANY OF AMERICA,
et al., Defendants.

No. CIV.A. 3:01CV799LN.

United States District Court,
S.D. Mississippi,
Jackson Division.

May 30, 2002.

Richard Runft Barrett, Barrett Law Offices, Lexington, MS, for Plaintiff.

Kelly D. Simpkins, Wells, Marble & Hurst, Patrick E. McAllister, Williford, McAllister & Jacobus, Paul V. Ott, Law Office of Paul V. Ott, Emerson Barney Robinson, III, P. Ryan Beckett, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for Defendants.

## MEMORANDUM OPINION
## AND ORDER

TOM S. LEE, Chief Judge.

This cause is before the court on plaintiff Sherman Davis's motion to remand, and his motion for mandatory abstention, discretionary abstention and equitable remand. Defendant Life Investors Insurance Company of America (Life Investors) has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be granted.

Plaintiff, a Mississippi resident, instituted this action in the Circuit Court of Holmes County, contending that defendant Life Investors had wrongly denied his claim for benefits under a policy of credit disability insurance sold to him by defendant McNatt Motor Company, a Mississippi company, in conjunction with his purchase and financing of an automobile from McNatt. Plaintiff alleged that Life Investors denied his claim for benefits on the basis that the plaintiff had made material misrepresentations in his application for coverage, when in fact, he had fully disclosed all relevant information to McNatt employee, Joni Hutchins, who omitted this information from the application.

Life Investors timely removed the case solely on the basis of diversity jurisdiction, asserting in its notice of removal that both of the resident/nondiverse defendants sued by plaintiff, McNatt and Joni Hutchins, were fraudulently joined inasmuch as plaintiff had not stated a cognizable claim for relief against either. Subsequently, and while the case was pending in this court awaiting responsive briefing by Life Investors on plaintiff's motion to remand, McNatt filed a petition for relief under Chapter 11 of the Bankruptcy Code and Life Investors moved to amend its notice of removal to assert 28 U.S.C. § 1134 as a

newly arisen basis for removal jurisdiction, namely, that the case is "related to" McNatt's Chapter 11 bankruptcy proceeding. The court allowed the amendment, and now has before it for consideration plaintiff's motion to remand, and related motion for mandatory abstention, discretionary abstention or equitable remand.

■ Regarding Life Investors' charge of fraudulent joinder, the court is of the opinion that Life Investors has not sustained its burden to show that plaintiff cannot establish a valid basis for recovery against the resident defendants. Life Investors directs the court's attention to plaintiff's complaint, and in particular to the allegation that after plaintiff fully disclosed his heart condition to Hutchins, Hutchins "knowingly and fraudulently misrepresented unto plaintiff what constitutes sufficient answers and responses to said application for credit life insurance benefits." From this, Life Investors argues that what plaintiff has actually alleged is that Hutchins told Davis how to answer the questions so that he could obtain the insurance he wanted, and that Davis thus knowingly colluded with Hutchins to defraud Life Investors. Life Investors then concludes that because of his knowledge and participation in this scheme, Davis has no action against Hutchins, or any other defendant. In support of this assertion, Life Investors relies on *Downing v. City of Jackson*, 199 Miss. 464, 24 So.2d 661 (Miss. 1946), where the court stated,

> Whoever, by his pleadings in any court of justice, avows that he has been engaged with others in an unlawful action, or has concerted with them in an unlawful enterprise, and that in arranging for or carrying it out he has been unfairly treated by his associates, or has suffered an injustice which they should redress, will be met by the refusal of the court to

look any further than his complaint, which it will at once order dismissed.

While this may be a correct legal principle, the court is not convinced that it applies to the case at bar. The plaintiff's pleading may not be altogether clear, but the gist of his complaint would seem to be that he disclosed his heart condition to Hutchins, who misled him to believe that it was not relevant to his application for insurance; and there is under Mississippi law a potential for liability on the basis of such allegations. *See Estate of Jackson v. Mississippi Life Ins. Co.*, 755 So.2d 15, 21 (Miss.App.1999) (reversing grant of summary judgment for car dealership and its employee who sold credit life insurance to automobile purchaser where plaintiff alleged that employee recorded incorrect information on insurance application, and basing opinion on " 'well established [rule] in this State that where the agent of an insurance company undertakes the preparation of an application for insurance, and by mistake or omission, fails to correctly write down the answers to questions propounded to the applicant, the company will be bound by the knowledge acquired by the agent just as if the agent had correctly written the answers in the application....' ") (quoting *Jefferson Life & Cas. Co. v. Johnson*, 238 Miss. 878, 883, 120 So.2d 160, 162 (1960)). The question then is whether the court has "related to" bankruptcy jurisdiction over this case, and if so, whether the case must or should nonetheless be remanded.

■ In December 2001, McNatt filed for Chapter 11 bankruptcy protection which, as indicated, precipitated Life Investors' assertion in this case of subject matter jurisdiction under 28 U.S.C. § 1334, which provides for jurisdiction in the district courts "of all civil proceedings under title 11, or arising in or related to cases under title 11." In particular, Life

Investors maintained that this case "relates to" McNatt's bankruptcy in at least two respects. First, it contended that since McNatt, a defendant in this case, is the debtor in bankruptcy, the outcome of this case could "conceivably have an effect on the estate being administered in bankruptcy." *Arnold v. Garlock, Inc.*, 278 F.3d 426, 434 (5th Cir.2001) (identifying this as the test in this circuit for whether a proceeding properly invokes federal bankruptcy jurisdiction, and observing further that "[c]ertainty, or even likelihood of … an effect [on administration of the bankruptcy estate] is not a requirement"). *See also Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) (stating, "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate."). Second, Life Investors claimed that it has a contractual right to indemnity from McNatt for any

judgment the plaintiff might obtain against Life Investors in this case and that right rendered this case "related to" McNatt's bankruptcy.

For his part, plaintiff notes that the bankruptcy court has recently lifted the automatic stay to allow him to proceed against the limits of McNatt's liability insurance, a fact which he contends eviscerates the first basis of "related to" jurisdiction urged by Life Investors. *See Brown v. Fitzgeralds Mississippi, Inc.*, No. 2:01CV78–D–B, 2001 WL 588930 (N.D.Miss. May 24, 2001) (finding no "related to" jurisdiction and remanding case where bankruptcy court had lifted automatic stay to allow plaintiff to proceed solely against the debtor's liability insurance, since in that circumstance, plaintiff's claims would not conceivably have an effect on the debtor's bankruptcy estate). Life Investors does not challenge the *Brown* court's conclusion and its applicability to the case at bar,[1] but it does con-

---

1. Because it concludes that it has "related to" jurisdiction on other grounds, the court need not further consider this issue. The court would note, though, that it is skeptical of the conclusion that a lawsuit against a debtor in bankruptcy is not "related to" the bankruptcy simply because any recovery will be had from proceeds of the debtor's liability insurance policy. The court is aware that the Fifth Circuit has in one circumstance distinguished between an insurance policy maintained by the debtor, which did constitute property of the bankruptcy estate, and the *proceeds* of the policy, which did not. *See In re Louisiana World Exposition*, 832 F.2d 1391 (5th Cir. 1987) (holding that the proceeds of Directors and Officers liability insurance policies were not part of a corporation's bankruptcy estate even though the policies were purchased and owned by the corporation, reasoning that "despite the debtor's legal ownership of the policies qua policies, this court determined that the directors and officers were the equitable owners of all of the proceeds of those policies, pretermitting inclusion of the proceeds in the estate of the debtor."). More recently, however, the Fifth Circuit has sug-

gested (though not definitively decided) that the recognition of a distinction between a liability policy and its proceeds is arguably confined to that "narrow factual context," stating,

> Faced with the typical situation in which a debtor corporation's liability policies provide the debtor and thus the estate with direct coverage against third party claims, virtually every court to have considered the issue has concluded that the policies—and clearly the proceeds of those policies—are part of debtor's bankruptcy estate, irrespective of whether those policies also provide liability coverage for the debtor's directors and officers. Most courts do not even recognize a technical distinction between ownership of insurance policies and ownership of the proceeds of those policies: They simply conclude that such policies—and, by implication, the proceeds of such policies—are valuable properties of debtors' bankruptcy estates.

*Matter of Vitek, Inc.*, 51 F.3d 530, 534 (5th Cir.1995). The court also observed in *Vitek* that language in one of the cases relied on by

tend that *Brown* is distinguishable because of the indemnity agreement between McNatt and Life Investors, and that this case, unlike *Brown,* is related to McNatt's bankruptcy. That is, it states that irrespective of the bankruptcy court's order lifting the automatic stay to the extent of McNatt's insurance coverage, this case remains "related to" McNatt's bankruptcy since the claims in this case could conceivably have an effect on the bankruptcy estate due to the indemnification agreement between McNatt and Life Investors. The court tends to agree, particularly in view of the fact that Life Investors has filed a proof of claim in McNatt's bankruptcy proceeding based on its claimed right of indemnification, and specifically, based on its position that it has an absolute right of indemnity against McNatt if, and when, a judgment is entered against it in this case. *See Arnold v. Garlock,* 278 F.3d at 426 (stating that " 'related to' bankruptcy proceedings include ... suits between third parties which have an effect on the bankruptcy estate, and observing that a party's asserted claim for contribution against the debtor fell into that category, but ultimately finding no 'related to' " jurisdiction since contribution claim was invalid as a matter of law); *Kocher v. Dow Chem. Co.,* 132 F.3d 1225, 1231 (8th Cir.1997) (finding, based on potential indemnification claims, that it was "at least arguable that [the plaintiff's] claims against [the debtor] conceivably could affect [the debtor's] bankruptcy estate and thus [were] 'related to' the bankruptcy case"); *Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Providers (In re Dow Corning Corp.),* 86 F.3d 482, 494 (6th Cir.1996) (finding "related to" jurisdiction, stating, "The potential for Dow

Corning's being held liable to the nondebtors in claims for contribution and indemnification, or vice versa, suffices to establish a conceivable impact on the estate in bankruptcy...."); *International Fid. Ins. Co. v. Kerley,* Civ. A. No. 94–0071–C, 1995 WL 245613, at *4 (W.D.Va.1995) (stating that "where a third-party will have a claim of contribution against the bankruptcy estate... such cases have been deemed related within the meaning of § 157(c)"). Thus, the court concludes that it does have subject matter jurisdiction. However, even though the court has jurisdiction, plaintiff has moved for the court's mandatory abstention, or alternatively, for discretionary abstention or remand.

Two types of mandatory abstention are provided for in 28 U.S.C. § 1334: mandatory abstention under § 1334(c)(2) and discretionary abstention under § 1334(c)(1). The statute provides:

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be

---

the plaintiff on this subject, *Matter of Edgeworth,* 993 F.2d 51, 55–56 (5th Cir.1993), was merely dicta. *Vitek,* 51 F.3d at 534 n. 17 ("general language in opinion by *Edgeworth*

panel that appears to endorse broadly the policy/proceeds dichotomy introduced in *Louisiana World Exposition* ... was ... dicta.").

timely adjudicated, in a State forum of appropriate jurisdiction.

 Thus, under § 1334(c)(2), in "non-core" proceedings, courts must abstain from hearing a state law claim for which there is no independent basis for federal jurisdiction other than § 1334(b) "if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." *In re Gober*, 100 F.3d 1195, 1206 (5th Cir.1996). But even when mandatory abstention does not apply, the court has the discretion to abstain from deciding either core or non-core proceedings under § 1334(c)(1) if the interests of justice, comity, or respect for state law so require. *Id.* Further, 28 U.S.C. § 1452(b) permits a federal district court, on any equitable ground, to remand a claim related to a bankruptcy case which has been removed to federal court.

 In the case at bar, plaintiff argues that the requisites for mandatory abstention are present, but that even if they are not, the court still ought to abstain and remand the case. On the other hand, Life Investors insists that this is a core proceeding which is not subject to mandatory abstention and that the case properly belongs, and should remain, in this court.

In this case, the plaintiff has timely moved for abstention, his cause of action is premised entirely on state law, the case is one which could not have been brought to this court absent the bankruptcy case and the case, it appears, can be timely adjudicated in state court. *See In re McCray*, 209 B.R. 410, 414 (Bankr.N.D.Miss.1997) (setting forth conditions for mandatory abstention). The major point in contention

between the parties is whether this case is a "core" or "non-core" matter, for if the latter, mandatory abstention applies and this court must abstain.

The relevant statutes do not define what constitutes a "core" proceeding, but instead, 28 U.S.C. § 157(b)(2) sets forth a non-exclusive list of matters which are deemed core proceedings, including, among others,

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate . . .;

. . .

(D) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

Life Investors does not appear to contend that plaintiff's claims against McNatt constitute a core proceeding, and indeed, they do not.[2] Rather, Life Investors asserts that in view of its indemnity contract with McNatt, plaintiff's claims against Life Investors make this a core proceeding under the cited subsections of § 157(b)(2). The court addresses each of its arguments, in turn.

Life Investors first contends that this case is a matter affecting the administration of McNatt's bankruptcy estate because under the contract between McNatt and Life Investors, Life Investors is entitled to absolute indemnity by McNatt on account of any judgment that might result against it in this case,[3] and consequently,

**2.** *See Matter of Wood*, 825 F.2d 90, 97 (5th Cir.1987) (a suit based on state created rights that could have proceeded in state court absent the bankruptcy is not a core proceeding); *Broyles v. United States Gypsum Co.*, 266 B.R. 778, 783 (E.D.Tex.2001) ("Where all of a

case's alleged tortious conduct and breaches of contract occurred pre-petition, the case is non-core to the bankruptcy proceeding.").

**3.** Life Investors reasons that since plaintiff is seeking damages against Life Investors result-

the automatic stay under § 362(a) is applicable. *See Arnold v. Garlock, Inc.,* 278 F.3d 426 (5th Cir.2001) (while § 362 "is rarely ... a valid basis on which to stay actions against non-debtors... [b]y exception, a bankruptcy court may invoke § 362 to stay proceedings against nonbankrupt co-defendants where such identity between the debtor and the third-party defendant exists that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor") (citing *A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.),* 788 F.2d 994, 998 (4th Cir.1986), in which the court gave as an example of the situation in which a judgment against a third-party non-debtor defendant will in effect be a judgment or finding against the debtor, "a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case"). In the court's opinion, it is by no means a foregone conclusion that Life Investors is so situated that the automatic stay would have extended to plaintiff's claims against it, and Life Investors has cited no authority suggesting that the potential applicability of the automatic stay to the claims against it would have rendered this a core proceeding; but in the court's view, since the stay has now been lifted, at least to the extent of McNatt's liability insurance coverage, the question is now merely academic.

Life Investors next contends that because it has filed a proof of claim in McNatt's bankruptcy case based on its right to absolute indemnity in the event a judgment is rendered against it in this case, and because this case is intertwined with Life Investors' proof of claim, it follows that this case affects the allowance or disallowance of claims against McNatt's bankruptcy estate. *See Matter of U.S. Abatement Corp.,* 79 F.3d 393, 398 (5th Cir.1996) (stating that the filing of a proof of claim "invokes the special rules of bankruptcy," and that "a claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy.") (citing *Matter of Wood,* 825 F.2d 90, 97 (5th Cir.1987)); *see also Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990) (holding that when a party submits a proof of claim, it "trigger[s] the process of 'allowance and disallowance of claims,'" and thereby is consenting to jurisdiction of the bankruptcy court to make a final decision as to its claim) (citing *Granfinanciera v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 2799–2800, 106 L.Ed.2d 26 (1989)); *Matter of Wood,* 825 F.2d 90, 97 (5th Cir.1987) (explaining that "[a] claim against the estate is instituted by filing a proof of claim as provided by the bankruptcy rules. The filing of the proof invokes the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the rights of the claimant to vote on the proposed distribution. Understood in this sense, a claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy"); *In re Efficient Solutions, Inc.,* Civ. A. No. 00–3071, 2000 WL 1876356, *5 (E.D.La.2000) (recognizing that proceedings on a creditor's proof of claim against the debtor are core proceedings, and that even though the creditor could "enforce its state law contract rights against the debtor in state court absent the bankruptcy," once a proof of claim has been filed, the

ing from the negligence and/or misconduct of McNatt's employee (and McNatt, vicariously), then under its contract with McNatt, it will be

entitled to absolute indemnity from McNatt in the event a judgment is rendered against it in this case.

claim is a core proceeding subject to the jurisdiction of the bankruptcy court).

■ The court rejects Life Investors' contention that this is a core proceeding merely because it is "intertwined with" its indemnity claim. Although it certainly has contended in its various memoranda to the court that it will have a right to absolute indemnity in the event the plaintiff recovers a judgment against it in this case—which, as noted, is the premise of its proof of claim in McNatt's bankruptcy—the fact of the matter is, Life Investors has not asserted a claim for indemnity in any pleading in this case. Had it done so, the court would no doubt consider that claim to be a core proceeding.[4] *See In re Best Reception Systems, Inc.,* 220 B.R. 932 (Bankr.E.D.Tenn.1998) (agreeing that "where a party has filed a proof of claim in a debtor's case, any action asserted by that party against the debtor that raises the same issues as those encompassed by the proof of claim is a core proceeding under the authority of 28 U.S.C. § 157(b)(2)(B)"); but it has not, and the fact that Life Investors has filed a proof of claim is not, therefore, a basis for concluding that this is a core proceeding.

Life Investors finally argues that this case affects the liquidation of the assets of McNatt's estate, rendering it a core proceeding under the "catch-all" provision of § 157(b)(2)(O), because if this case culminates in a judgment against Life Investors, it will have a right to indemnity which will be a claim against the assets of McNatt's estate, and most likely against insurance proceeds under any policy of insurance maintained by McNatt covering an indemnification claim.[5] *See Matter of Vitek, Inc.,* 51 F.3d 530, 535 (5th Cir.1995) ("[W]hen a debtor corporation owns an insurance policy that covers its own liability vis-a-vis third parties, we ... declare or at least imply that both the policy and the proceeds of that policy are property of the debtor's bankruptcy estate."); *Louisiana World Exposition, Inc. v. Federal Ins. Co. (In re Louisiana World Exposition, Inc.),* 832 F.2d 1391, 1399–1400 (5th Cir.1987) (same); *Tringali v. Hathaway Mach. Co.,* 796 F.2d 553, 560 (1st Cir.1986) ("The language of § 541(a)(1) (defining property of the estate) is broad enough to cover an interest in liability insurance, namely, the debtor's right to have the insurance company pay money to satisfy one kind of debt—debts accrued through, for example, the insured's negligent behavior."). The court is not persuaded. This case is not a core proceeding merely because the outcome of this case, if adverse to Life Investors, will result in a claim (or support the existing contingent claim) by Life Investors against McNatt's bankruptcy estate which in turn might affect the assets of the estate.[6]

4. As several courts have observed, the "core proceeding" analysis is properly applied not to the case as a whole but as to each cause of action within a case. *See In re Best Reception Systems, Inc.,* 220 B.R. 932 (Bankr.E.D.Tenn. 1998) ("Although the case law does not specifically speak to this distinction, the word 'proceeding' must refer to the specific causes of action and grounds for relief sought by a party, and not to the entire action....") (quoting *Ralls v. Docktor Pet Centers, Inc.,* 177 B.R. 420 (D.Mass.1995)).

5. Although it does not claim to be aware of any specific insurance policy, Life Investors points out that its indemnification agreement with McNatt obligated McNatt to maintain an insurance policy or bond to cover any indemnification claim by Life Investors.

6. Life Investors also argues rather vaguely that this case affects the liquidation of the assets of McNatt's bankruptcy estate and the debtor-creditor relationship because this action "strikes at the heart of the debtor-creditor relationship." With no more explanation that this, the court is at a loss as to precisely

**194**

From the court's conclusion that this is not a core proceeding, it follows that mandatory abstention applies, since it has already concluded that the other criteria for mandatory abstention are present. The court would note further, though, that even if it were not required to abstain, it would choose to abstain and remand in view of the fact that the case involves solely state law issues, the fact that there would be no jurisdiction over the case were it not for the bankruptcy, and in view of the plaintiff's right to a jury trial and because, in the court's view, maintaining jurisdiction will not contribute in any way to the efficient administration of the bankruptcy estate.[7]

For all of the foregoing reasons, it is ordered that plaintiff's motion for mandatory abstention or, in the alternative, discretionary abstention and equitable remand is granted.

in what manner this case is claimed to "strike at the heart" of the McNatt–Life Investors debtor-creditor relationship.

7. Factors the court typically should consider when presented with questions of discretionary abstention and/or equitable remand include, *inter alia,*

(1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention;

(2) extent to which state law issues predominate over bankruptcy issues;

(3) difficult or unsettled nature of applicable law;

(4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding;

(5) jurisdictional basis, if any, other than § 1334;

(6) degree of relatedness or remoteness of proceeding to main bankruptcy case;

(7) the substance rather than the form of an asserted core proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden of the bankruptcy court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of non-debtor parties;

(13) comity; and

(14) the possibility of prejudice to other parties in the action.

*Searcy v. Knostman,* 155 B.R. 699, 710 (S.D.Miss.1993).