Karen **HENDERSON**, wife of William C. Henderson, Deceased, Plaintiff

v.

**PHC-CLEVELAND**, d/b/a Bolivar Medical Center; and Dr. Patrick E. Sewell, Jr., Defendants

NO. 4:15CV161-M-V

United States District Court, N.D. Mississippi, Greenville Division.

Signed July 22, 2016

Ellis Turnage, Ellis Turnage, Attorney, Cleveland, MS, for Plaintiff.

Penny Beckwith Lawson, R. E. Parker, Jr., Varner Parker & Sessums, Vicksburg, MS, J. L. Wilson, IV, Upshaw, Williams, Biggers & Beckham, LLP, Greenwood, MS, for Defendants.

## ORDER

MICHAEL P. MILLS, UNITED STATES DISTRICT JUDGE, NORTHERN DISTRICT OF MISSISSIPPI

This cause comes before the court on the motion of plaintiff Karen Henderson, seeking for this court to remand and/or abstain from hearing the instant removed action. Defendant Dr. Patrick Sewell has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

This is a medical malpractice case arising out of the March 10, 2010 death of William C. Henderson during a surgical procedure at Bolivar Medical Center in Cleveland, Mississippi. The decedent's wife Karen filed the instant wrongful death action on April 23, 2012 in the Circuit Court of the Second Judicial District of Bolivar County, Mississippi, asserting that her husband's death was the result of medical negligence on the part of Dr. Sewell. In her complaint, plaintiff named as defendants both Dr. Sewell and the Bolivar Medical Center. On October 16, 2015, Dr. Sewell filed a petition for Chapter 7 bankruptcy, and he removed this case less than a month later on the basis of that filing. *See* 28 U.S.C. §§ 1334 and 1452.

In arguing that this case was properly removed, Dr. Sewell maintains that the court has federal bankruptcy jurisdiction based on the fact that his Chapter 7 bankruptcy filing "relates" to the instant lawsuit within the meaning of 28 U.S.C. § 1334(b). (Providing that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings ... related to cases under title 11.") While this appears to be correct, the real issue, as with most bankruptcy removals, is whether this court is either required to abstain from hearing it or whether it should exercise its discretion to do so. In deciding this issue, the court first notes that this case involves a medical malpractice action based solely on state law which, all parties agree, is not a "core proceeding" within the meaning of 28 U.S.C. § 1334(c)(2).

Section 1334(c)(2) requires this court to abstain from hearing cases based on "related to" bankruptcy jurisdiction where:

1. A motion has been timely filed requesting abstention.

2. The cause of action is essentially one that is premised on state law.

3. The proceeding is non-core or related to the bankruptcy case.

4. The proceeding could not otherwise have been commenced in federal court absent the existence of the bankruptcy case.

5. The proceeding has already been commenced and can be timely adjudicated in a state court forum.

*See also Blakeley v. United Cable System*, 105 F.Supp.2d 574, 583 n. 9 (S.D.Miss. 2001). Thus, in cases where a timely motion for abstention has been filed, the law gives this court no choice but to abstain from hearing non-core cases premised on state law which could not have been commenced in federal court absent the existence of the bankruptcy case, so long as the case can be timely adjudicated in state court.

Defendant argues that mandatory abstention is inapplicable in this case, since diversity of citizenship exists among the

parties, thereby rendering the fourth mandatory abstention requirement inapplicable. That is, defendant argues that, since the existence of diversity jurisdiction means that the action "could ... otherwise have been commenced in federal court absent the existence of the bankruptcy case," this court is not required to abstain from hearing it.

It is not entirely clear to this court that defendant's argument is correct, since, while diversity of citizenship does exist among the parties, this is not a case which could have been removed to federal court, barring the bankruptcy filing. This is because 28 U.S.C. § 1441(b)(2) provides that "a civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Both defendants are Mississippi residents, and this case could therefore not have been removed based upon diversity jurisdiction. Nevertheless, § 1334(c)(2) is written in terms of whether an action could have been "commenced" in federal court, and this court will assume that this refers to whether or not the *plaintiff* could have originally filed this action in federal court. Plaintiff could, in fact, have chosen to file this action in federal court, and this court will therefore assume that mandatory abstention is inapplicable in this case.

██ While it thus appears that this court is not required to abstain from hearing this action, it nevertheless concludes that it has discretion to do so under 28 U.S.C. § 1334(c)(1) and that it should exercise that discretion. Factors the court typically should consider when presented with questions of discretionary abstention include:

(1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention;

(2) extent to which state law issues predominate over bankruptcy issues;

(3) difficult or unsettled nature of applicable law;

(4) presence of related proceeding commenced in state court or other non-bankruptcy proceeding;

(5) jurisdictional basis, if any, other than § 1334(c);

(6) degree of relatedness or remoteness of proceeding to main bankruptcy case;

(7) the substance rather than the form of an asserted core proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden of the ... court's docket;

(10) the likelihood that the commencement of the proceeding in the [district] court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of non-debtor parties;

(13) comity; and

(14) the possibility of prejudice to other parties in the action.

*Davis v. Life Investors Ins. Co. of America*, 282 B.R. 186, 194 n. 7 (S.D.Miss.2002).

This court believes that these factors strongly support abstention in this case, although it will not address them in any particular order. All parties agree that this case is a non-core proceeding, thus rendering the seventh factor supportive of abstention. Moreover, this non-core proceeding involves purely state law issues of tort law, which are potentially "difficult" and "unsettled" ones within the meaning of the

third factor. Indeed, this court notes that Mississippi's laws relating to wrongful death actions are rather complex, with rather idiosyncratic rules regarding which elements of damages are recoverable by various relatives and also regarding the proper procedures for recovering those damages. *See Long v. McKinney*, 897 So.2d 160, 162–63 (Miss.2004)("[n]o area of the law has historically provided more muddled, misquoted and misunderstood procedural rules, than civil claims for wrongful death."). The Mississippi Supreme Court has lamented the "beleaguered state of the law in wrongful-death actions," *see River Region Medical Corp. v. Patterson*, 975 So.2d 205, 208 (Miss. 2007), and it seems clear that Mississippi state courts are much better positioned to resolve any unsettled or unclear issues which might arise in this context. Indeed, unlike federal courts, the Mississippi Supreme Court may simply clarify any unclear points of law, with no need to make *Erie*-guesses regarding difficult issues.

Aside from being better positioned to decide these unsettled issues of state law, it seems clear that Mississippi state courts have an interest in doing so, and the thirteenth factor, relating to "comity," therefore supports abstention. In a similar vein, the second factor inquires regarding the "extent to which state law issues predominate over bankruptcy issues," and it seems clear that the predominance of state law issues in this case is very high. Turning to other important factors, this court concludes that the "degree of relatedness or remoteness" of this tort lawsuit to the "main bankruptcy case" is quite low, and any indebtedness which might arise from it can simply be dealt with by the bankruptcy court after the fact. This court notes that the bankruptcy implications of this lawsuit are lessened even further by plaintiff's pledge in her briefing to not seek to recover any amounts in excess of defendant's $1 million in liability coverage

against his bankruptcy estate. At any rate, from the perspective of the Chapter 7 bankruptcy filing, the instant lawsuit is simply a state law claim to be evaluated, and, once again, Mississippi state courts are in a better position to perform this task.

Relatedly, the eighth factor seeks to determine the "feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court." It is, once again, quite feasible to simply allow Mississippi courts to assign a value to the state law claim in this case, and this court has little doubt that, after that has been done, the bankruptcy court will be able to determine any bankruptcy implications of the state court proceedings. Of course, this case involves a bankruptcy filing by a defendant, and there may well be issues for the bankruptcy court to resolve regarding the effect of the automatic bankruptcy stay. *See* 11 U.S.C. § 362. It strikes this court that any such issues are easily severable from the state law claims, however, and it should be apparent that federal bankruptcy courts and state courts manage to work together on these issues on a regular basis.

The tenth factor inquires regarding the potential for forum shopping, and this court believes that concerns in this regard support abstention. In so stating, this court first recognizes that it has no insight into Dr. Sewell's specific motivations for filing bankruptcy in this case; he may have been concerned solely with financial issues in doing so. Having said that, this court believes that there would arise a real potential for mischief if a defendant's decision to file for bankruptcy after being sued were to be seen as a reliable vehicle for removing a case which could not otherwise be removed. Once again, the fact that Dr. Sewell is a Mississippi resident would have

precluded him from removing this case on the basis of diversity jurisdiction, and it strikes this court as anomalous to permit him to do so simply because he chose to file for bankruptcy. While the right to file bankruptcy is an important one, it is not clear to this court why a defendant's decision to do so should interfere with Congress's intent regarding who may and may not remove a case to federal court.

Defendant argues that the fifth factor is met, since there is diversity among the parties and thus a "jurisdictional basis ... other than § 1334(c)." This court regards this as being something of a "gray area," given that, once again, this case could have been filed in federal court on the basis of diversity jurisdiction, but it could not have been removed on this basis. At best, this factor seems to slightly favor defendant, and this court does not regard it as an important one. This court regards the twelfth factor, relating to the "presence in the proceeding of non-debtor parties" as slightly favoring plaintiff, since the Bolivar Medical Center is a defendant in this action and has not filed for bankruptcy. Dr. Sewell argues that the hospital is likely to be dismissed, but the fact remains that it is a defendant in this lawsuit at this time.

This court finds the remaining factors to be essentially neutral ones, including those relating to the right to a jury trial and the burden on this court's docket. A jury trial would be available in this action in either state or federal court, and this court would not be opposed to adding this case to its docket if the federal judiciary were best positioned to try it. It is not, for the reasons previously stated in this order. This court notes that the views expressed in this order are not new ones; it has made similar observations in prior cases. In a 2008 order in *Shoemaker v. Batesville Hosp. Mgmt.*, for example, this court wrote, in concluding that abstention was warranted, that:

This case involves a bankruptcy *defendant*, rather than plaintiff, but it is not clear to this court why the concerns expressed above would not apply equally in this case. Indeed, it is a very common occurrence for defendants to file for bankruptcy after being sued, and the court is unaware of any general practice by which lawsuits are removed and tried in bankruptcy court after a defendant does so. This court's inclination is to conclude that any bankruptcy implications arising from the Chapter 11 filing of one of the defendants herein can be adequately addressed by the application of the automatic stay, *see* 11 U.S.C. § 362, and/or by securing any necessary orders enforcing bankruptcy laws directly from the state court and/or the bankruptcy court.

*Shoemaker*, 2008 WL 294551, at *3 (N.D.Miss. Jan. 31, 2008). As it did in *Shoemaker*, this court concludes that the mere fact that a tort defendant chose to file for bankruptcy constitutes insufficient reason as to why this lawsuit should be litigated in federal court. Plaintiff's motion seeking for this court to abstain from hearing this matter under § 1334(c)(1) is therefore well taken and due to be granted.

It is therefore ordered that plaintiff's motion to remand and/or to abstain is granted, and this case is hereby remanded to the Circuit Court of Bolivar County.

SO ORDERED, this the 22nd day of July, 2016.