In re LORAX CORPORATION, Debtor.

Shawn K. Brown, as Trustee for the Lorax Corporation, Plaintiff,

v.

Phillip Shepherd, as Trustee of the Greenwall Liquidation Trust, Defendant.

Bankruptcy No. 02–48396–DML–11. Adversary No. 03–4128.

United States Bankruptcy Court, N.D. Texas, Fort Worth Division.

June 27, 2003.

William J. Doby, Locke, Liddell and Sapp, Dallas, TX, for Shawn K. Brown, As Trustee for The Lorax Corporation.

Doug Stum, Austin, TX, for Phillip Shepherd, As Trustee of The Greenwall Liquidation Trust.

## REVISED MEMORANDUM OPINION AND ORDER [1]

DENNIS MICHAEL LYNN, Bankruptcy Judge.

Before this court is Defendant's motion to abstain and dismiss (the "Motion"). The Court has jurisdiction over this matter

---

1. This revised Memorandum Opinion and Order is in substitution for the original filed on June 25, 2003.
   It does not affect the outcome of the case.

2. In the complaint (the "Complaint") instituting the above-captioned adversary proceeding

pursuant to 28 U.S.C. §§ 1334 and 157(b)(3).

## I. BACKGROUND

Debtor is the purported lessee of real property and improvements located in Athens, Texas (the "Property") pursuant to a lease agreement between E. Herbert Gatlin ("Gatlin"), Defendant's predecessor as trustee of the Greenwall Liquidating Trust (the "Greenwall Trust"), and Debtor (as amended, the "Lease Agreement"). The Greenwall Trust was created to hold title to the Property as part a settlement between the Texas Natural Resource Conservation Commission (the "TNRCC"), a predecessor of the Texas Commission on Environmental Quality, and Curtis Mathes Manufacturing Company ("Curtis Mathes") and Harvey Industries, Inc. ("Harvey"). Curtis Mathes and Harvey, both chapter 11 debtors themselves, attempted to abandon the Property during the course of their respective cases. The TNRCC objected to the abandonment because of environmental issues concerning the Property. As part of the resulting settlement, title to the Property was placed in the Greenwall Trust, with the State of Texas as the beneficiary.

The Greenwall Trust entered into an environmental agreement (as amended, the "Environmental Agreement") and the Lease Agreement with Debtor (f/k/a/ Greenwall Insulation Company). Through that transaction, Debtor obtained a fully funded thirty-year ground lease on the Property[2] and an option to purchase the Property for additional consideration in

---

(the "Fort Worth Suit"), Plaintiff Trustee avers that Debtor paid $10,000 in full satisfaction of all lease payments due for the thirty-year term of the Lease Agreement. Complaint, ¶ 16.

the amount of $200,000.[3] From the testimony and evidence presented by the parties, the court understands Debtor's estate is comprised virtually entirely of whatever interest Debtor has in the Property, Lease Agreement and Environmental Agreement.

After entering into the Lease Agreement and the Environmental Agreement, Debtor entered into a loan agreement with Enterprise National Bank of Palm Beach ("Enterprise"), and, purportedly, granted Enterprise a security interest in Debtor's current and future rights under the Lease Agreement.[4] Debtor then subleased part of the Property to a number of parties, including Dallas Manufacturing, Inc. ("DMC"), Texas Ragtime, Inc. ("TRI") and ATCO Products, Inc. ("API").

Henderson County Property Corporation ("HCPC") claims that, at some point after Debtor entered into the Environmental Agreement and the Lease Agreement, it acquired the State of Texas' beneficial interest in the Greenwall Trust.[5] HCPC further claims to have removed Gatlin as trustee of the Greenwall Trust and to have replaced him with Defendant.[6] Finally, HCPC claims to have acquired Enterprise's position with respect to Debtor's interests in the Lease Agreement and the Environmental Agreement.[7]

On September 17, 2002, Defendant filed a petition for declaratory judgment in the 353rd District Court, Travis County, Texas (the "Austin Suit"). Through the Austin Suit, Defendant sought declaratory judgment on three issues. First, he sought a declaration that Debtor defaulted under the Environmental Agreement. Second, Defendant sought a declaration that HCPC succeeded to all of the Texas Commission on Environmental Quality's rights, title and interests in the Environmental Agreement. Finally, Defendant sought a declaration that HCPC informed Debtor of its default under the Environmental Agreement and declared the Environmental Agreement terminated and all conveyances made pursuant thereto null and void.

On October 31, 2002, several creditors of Debtor filed an involuntary petition against Debtor, thereby instituting the above-captioned reorganization case in this court. The court entered an order for relief under chapter 11 of title 11[8] on December 2, 2002. On December 6, 2002, the court directed the United States Trustee to appoint a trustee to oversee the conduct of Debtor's chapter 11 case.[9] On December 16, 2002, the United States Trustee appointed Plaintiff to serve in that capacity.

On February 28, 2003, Plaintiff caused the Austin Suit to be removed to the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "Austin Bankruptcy Court"). Defendant opposed that removal and (acting in concert with HCPC) filed his motion for remand or abstention in that case on March 24, 2003 (the "Austin Motion"). On March 12, 2003, Plaintiff filed a motion to transfer venue of the Austin Suit to this court. On

---

3. Neither Plaintiff nor Debtor has exercised the option to purchase the Property.

4. Complaint, ¶ 19.

5. Complaint, ¶ 20.

6. Complaint, ¶ 20.

7. Complaint, ¶ 22. The court, however, will hereafter refer to Enterprise when discussing the claim secured by Debtor's leasehold.

8. *See* 11 U.S.C. §§ 101, et seq. (the "Code").

9. Debtor is not represented by counsel and, as a corporation, cannot participate on its own behalf. Thus, Plaintiff is the sole spokesperson of Debtor in this case.

May 13, 2003 the Austin Bankruptcy Court transferred the Austin Suit to this court and on May 28, 2003 closed out the adversary proceeding on its docket.

On March 25, 2003, Plaintiff initiated the Fort Worth Suit. The parties agree that the Fort Worth Suit is the "mirror image" of the Austin Suit, and that both raise substantially the same issues. More specifically, the Fort Worth Suit seeks a declaration that (i) Debtor paid all lease payments related to the Lease Agreement; (ii) there are no existing defaults under the Lease Agreement, or, if there are such defaults, they may be cured; (iii) the Lease Agreement and Environmental Agreement have not been terminated; and (iv) Plaintiff may, if he chooses, cure the defaults, if any, and assume either the Lease Agreement or the Environmental Agreement (or both).

## II. *ISSUE*

Before the court today is the narrow issue of whether abstention (either mandatory or permissive) applies with respect to the Fort Worth Suit.

## III. *DISCUSSION*

### A. *"Core" v. "Related To" Proceedings*

■ Section 1334 grants the federal district courts jurisdiction over four types of bankruptcy matters: (1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings "arising in" a case under title 11, and (4) proceedings "related to" a case under title 11.[10] A proceeding is "related to" a bankruptcy if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy."[11]

■ If the district court of which it is a unit so chooses, a bankruptcy court may "hear and determine" certain matters falling within the jurisdictional grant of 28 U.S.C. § 1334.[12] Specifically, 28 U.S.C. § 157(b)(1) gives bankruptcy courts full judicial power over "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under ... this section...."[13] Non-core proceedings that are "otherwise related to a case under title 11" may be heard by a bankruptcy judge, but, absent consent of the parties, any final order or judgment must be entered by the district court.[14] Thus, if a matter within the broad scope of section 1334(b) satisfies the narrower test for a core proceeding, section 157 authorizes the bankruptcy court (at least in most cases) to decide the matter and enter a final judgment.[15] While title

---

10. Section 1334 uses the term "proceeding" in its broadest sense. *See United States Brass Corp. v. Travelers Ins. Group, Inc. (In re United States Brass Corp.)*, 301 F.3d 296, 303–04 (5th Cir.2002). *See also* 1 COLLIER ON BANKRUPTCY ¶ 3.01[4][b] (15th ed. rev.2001) ("Anything that occurs within a case is a proceeding.") (quoting H.R. REP. NO. 95–595, at 445 (1977), U.S.Code Cong. & Admin.News 1978, at 5963, 6401).

11. *See In re United States Brass Corp.*, 301 F.3d at 304; *In re Wood*, 825 F.2d 90, 93 (5th Cir.1987); *Moto Photo v. K.J. Broadhurst Enters.*, 2003 WL 298799, *2 n. 2, 2003 U.S. Dist. LEXIS 1955, *7 n. 2 (N.D.Tex.2003).

12. *See* 28 U.S.C. § 157(a). The District Court for the Northern District of Texas has entered a general order of reference granting such authority to this court. *See* Miscellaneous Rule No. 33, *dated* August 3, 1984 (http://www.txnb.uscourts.gov/orders/misc33.pdf).

13. *See In re United States Brass Corp.*, 301 F.3d at 304 (quoting 28 U.S.C. § 157(b)(1)).

14. 28 U.S.C. § 157(c)(1) & (2).

15. *Accord Milbank v. Tomlin (In re Tomlin)*, 2002 Bankr.LEXIS 1370, *7 (Bankr.N.D.Tex. 2002). The determination of whether a matter is core is to be made by the bankruptcy judge. 28 U.S.C. § 157(b)(3).

28 does not define core proceedings, section 157(b)(2) does provide a nonexclusive list of examples.[16] Moreover, the Fifth Circuit has held that under 28 U.S.C. § 157 proceedings that fall within the categories of "arising under" and "arising in" are core proceedings; therefore, a "proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." [17]

■ In summation, any matter that is a core proceeding is a "related to" proceeding as that concept has been defined. This is so because core proceedings, by their very nature, affect the estate being administered in bankruptcy. The converse, however, is not true. Not all "related to" proceedings rise to the level of being "core proceedings". The court, therefore, views matters "arising in" or "arising under" the Code and core proceedings to be subsets of the broader category of matters "related to" bankruptcy cases. Thus, there could never be a core proceeding that was not related to a bankruptcy, but it is possible to have a proceeding related to a bankruptcy that is not core.

## B. Overview of Doctrine of Abstention

Section 1334(c) of title 28 provides for both permissive abstention under section 1334(c)(1), and mandatory abstention under section 1334(c)(2). In the Motion, Defendant asserts that under section 1334(c)(2) mandatory abstention applies to the Fort Worth Suit. In the alternative, he argues that this court should permissively abstain under section 1334(c)(1).

Section 1334(c)(2) of title 28, which governs whether mandatory abstention applies, states that:

> [u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Section 1334(c)(1) of title 28 allows the court to abstain from hearing a matter that arises under title 11 or in a case under title 11, or that is related to a case under title 11. It states that

> [n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding

---

16. *See* 28 U.S.C. § 157(b)(2)(A)—(O). The indefinite parameters of the concept of "core" proceedings suggests a recognition that what is core may vary to some extent based on the facts in a given case.

17. *In re Wood*, 825 F.2d at 97. The Fifth Circuit's discussion *could* be read to mean that, for example, a claim against property of the estate (section 102(2) of the Code) could not be adjudicated as a "core" proceeding, arguably being neither "a substantive right provided by title 11 [n]or ... a proceeding that ... could arise only in a bankruptcy case." *Cf.* 28 U.S.C. § 157(b)(2)(N) (as dis-

tinct from § 157(b)(2)(B), discussed in *Wood*, 825 F.2d at 97–8). The court, however, reads *Wood* to deem "related to" matters as being those which do not involve steps essential to the bankruptcy process (i.e. to the assertion of the "public rights" involved in estate administration) and do not require assertion of a bankruptcy created right. In the example given, that the "claim" may arise under state law does not prevent the bankruptcy court from determining its validity under state law as a prerequisite to dealing with it in administration of the bankruptcy estate. *Wood*, 825 F.2d at 97; 28 U.S.C. § 157(b)(3).

arising under title 11 or arising in or related to a case under title 11.

■ The word "abstain" is not defined by the statute. When a court *abstains from hearing a case*, it "declines to exercise its jurisdiction" over a particular matter.[18] The usual procedural device employed to "abstain" is to dismiss the matter pending before the federal tribunal, so that a parallel matter can proceed in an alternate forum.[19] With the foregoing in mind, the court now considers whether abstention (either mandatory or permissive) is called for in this case.

### C. *Mandatory Abstention*

■ Based on the language of section 1334(c)(2), if the following six requirements are satisfied, the court must abstain:

1) A party to the proceeding filed a timely motion to abstain;

2) The proceeding is based on a state law claim;

3) There is no basis for federal court jurisdiction other than section 1334;

4) The proceeding is a "related to", non-core proceeding;

5) An action is pending in state court; and

6) The state court action can be timely adjudicated.[20]

In other words, under section 1334(c)(2), in "non-core" proceedings, courts must abstain from hearing a state law claim for which there is no independent basis for federal jurisdiction other than § 1334(b) "if an action is commenced, and can be

timely adjudicated, in a State forum of appropriate jurisdiction." *In re Gober*, 100 F.3d 1195, 1206 (5th Cir.1996). The party requesting abstention must prove the existence of each element by a preponderance of the evidence. *See Brizzolara v. Fisher Pen Co.*, 158 B.R. 761 (Bankr.N.D.Ill.1993). *See also York v. Bank of America, N.A. (In re York)*, 291 B.R. 806, 816 (Bankr. E.D.Tenn.2003); *In re Taylor Agency, Inc.*, 281 B.R. 354 (Bankr.S.D.Ala.2001) (considering abstention under section 305 of the Bankruptcy Code). A party is not entitled to mandatory abstention if it fails to prove any one of the statutory requirements. *In re WorldCom Secs. Litig.*, 293 B.R. 308, 331 (S.D.N.Y.2003).

The court does not quarrel with Defendant's assertion that the Motion was timely filed. Indeed, Defendant filed the motion on April 24, 2003, less than a month after Plaintiff commenced the instant action. Accordingly, the first prong of the six-part mandatory abstention test has been met. Next, the court agrees that the disputes over whether the Lease Agreement and Environmental Agreement are still in force necessarily raise state law issues. The court, therefore, deems the second prong of the mandatory abstention test satisfied.

The next consideration is whether the court has any basis for jurisdiction over the issues raised in the Fort Worth suit other than that granted by 28 U.S.C. § 1334. For purposes of the Motion, the court will assume, *arguendo*, that it has no jurisdiction over the Fort Worth Suit other

---

**18.** *Lozano v. Swift Energy Co. (In re Wright)*, 231 B.R. 597, 602 (Bankr.W.D.Tex.1999).

**19.** *See id.* (quoting C. WRIGHT, A. MILLER, E. COOPER, FEDERAL PRACTICE AND PROCEDURE, Jurisdiction 2d, § 4245, at 102 (2d ed.1988) and cases cited and discussed therein).

**20.** *See P.O'B Apollo Tacoma, L.P. v. TJX Cos. (In re House2Homes, Inc.)*, 49 Collier Bankr. Cas.2d 419, 2002 Bankr.Lexis 962 (Bankr. N.D.Tex. Sept. 9, 2002); *Anderson v. Hoechst Celanese Corp. (In re U.S. Brass Corp.)*, 173 B.R. 1000, 1004 (Bankr.E.D.Tex.1994); *Gabel v. Engra, Inc. (In re Engra, Inc.)*, 86 B.R. 890, 894 (S.D.Tex.1988).

than that granted by 28 U.S.C. § 1334 and that the third prong of the mandatory abstention test is satisfied.

■ The court must now consider whether the Fort Worth Suit is merely a "related to" proceeding under 28 U.S.C. § 157, or whether it rises to the level of a core proceeding such that mandatory abstention would be inapplicable. Here, the existence (or nonexistence) of Debtor's interests in the Property, the Lease Agreement and the Environmental Agreement are of such import that Debtor's case simply cannot proceed until the instant disputes are resolved. Determination of the Fort Worth Suit equates to a determination of the nature and extent of the estate to be administered by Plaintiff for the benefit of creditors in this chapter 11 case. If Plaintiff is correct in his assertion that Debtor maintains an interest in the Property and related contracts, he may be able to formulate, present and confirm a plan of reorganization for Debtor. If, on the other hand, Defendant is correct and Debtor has no interest in the Property, Lease Agreement or Environmental Agreement, Debtor's case is a lost cause—with no as-

sets to speak of, Debtor's chances of being successfully reorganized are infinitesimal.

■ The court is aware of a number of cases that advance the proposition that the determination of the existence or nonexistence of an executory contract is not a core proceeding.[21] While this court might, in another case, agree with the foregoing premise, Debtor's posture in chapter 11 causes the court to question whether such a rule is applicable in all situations.[22] As stated above, Debtor's case cannot proceed until issues presented by the Fort Worth Suit are resolved. If this court were to cede these issues to a state court, it would effectively be ceding control over Debtor's chapter 11 case. This simply cannot be the result contemplated by Congress in enacting the Code and related statutes.[23] More specifically, 28 U.S.C. § 1334(a) grants to district courts (and, by reference, bankruptcy courts) "original and exclusive jurisdiction of all cases under [the Code]".[24] Notably, section 1334(a) does not provide for an exception to the district court's original and exclusive jurisdiction over all bankruptcy cases where an issue integral to the case happens to be an issue

**21.** *See Tasch, Inc. v. Sabine Offshore Serv., Inc. (In re Tasch, Inc.),* 1999 WL 64959, 1999 U.S. Dist. LEXIS 1631 (E.D.La.1999); *Hughes–Bechtol, Inc. v. Construction Management, Inc.,* 144 B.R. 755, 757 (S.D.Ohio 1992); *In re Midwest Communications Corp.,* 144 B.R. 354, 355 (Bankr.E.D.Ky.1992). *But see In re Harco Energy,* 270 B.R. 658, 663 (Bankr.N.D.Tex.2001) ("[t]he determination of the existence of an executory contract is a core matter over which this court has jurisdiction to enter a final order.").

**22.** If the Property, Lease Agreement and Environmental Agreement were simply a few among many potential assets of Debtor's estate, the court would find it easier to accept the reasoning of *Tasch* and similar cases. The court also finds *Harco* persuasive. Determination of the existence of a contract, after all, is a logical step in the process of assump-

tion or rejection under section 365 of the Code. As suggested above, it makes little sense to carve out from bankruptcy court consideration the one, critical issue from which the executory contract analysis must begin. See, *supra,* note 17.

**23.** *See e.g.* 28 U.S.C. § 1334(e) (granting the district court exclusive jurisdiction over all property of the debtor and the estate). Jurisdiction to determine the existence or nonexistence of property of a bankruptcy estate would seem to follow logically from the words of section 1334(e).

**24.** Taking section 1334(e) and section 1334(a) together, the Fort Worth Suit arguably falls within the court's power to "hear and determine all cases under title 11" (28 U.S.C. § 157(b)(1)) and is thus not subject to a "core" v. "related" proceeding analysis.

that, arising under different circumstances, would be viewed as "non-core".[25] With due deference to those courts that have found the determination of the existence or nonexistence of an executory contract to be merely "related to" a case under the Code, this court concludes that the issues raised in the Fort Worth Suit are "core" proceedings with respect to Debtor's chapter 11 case. Any issue so central to a case under the Code that to deprive the bankruptcy court of the power to adjudicate it would eviscerate the court's section 1334(a) jurisdiction must be, by its very nature, a core proceeding.[26] Thus, the court concludes Defendant has failed to carry his burden on the fourth prong of the mandatory abstention test.

Though this arguably disposes of the mandatory abstention issue, the court will address the remaining elements required for mandatory abstention and

turns now to the fifth prong of the test that there be an action pending in state court (or some other nonbankruptcy tribunal) to carry forward should this court abstain from hearing the Fort Worth Suit. In a prior opinion, this court held that mandatory abstention requires the presence of a pendent nonbankruptcy action in favor of which the bankruptcy court must abstain.[27] Intuitively, this makes sense. If the court abstained, and there was not another pendent proceeding to take the place of the Fort Worth Suit, the issues raised in the instant adversary proceeding could be relegated to some judicial netherworld, never to be resolved.

The case at bar presents an interesting twist on this issue. The Austin Suit began life as an action in the Texas state court system. It was thereafter removed to the Austin Bankruptcy Court, and then, prior to this court's consideration of the Motion,

**25.** If, for example, a state suit could be maintained seeking a declaration that a partnership—as opposed to a tenancy in common—did not exist between parties, and one party filed a petition under section 303(b)(3) of the Code against the "partnership," even the pendency of the state proceeding would not preclude the bankruptcy court from determining whether a partnership existed. Yet Defendant's reading of 28 U.S.C. § 1334 and *Wood* requires abstention. As recognized in *Wood*, 825 F.2d at 97–98, *how* an issue comes to the court may affect whether it is core. The context of the Fort Worth Suit is such that, unlike the litigation in *Wood*, it may be seen as a core matter presenting issues that necessarily arise in the chapter 11 case.

**26.** Determination of the viability of the Lease Agreement is not only central to the case and an integral part of any determination covering it under section 365 of the Code; it amounts to determination of the existence of an estate under section 541 of the Code. The issue is implicit in potential core proceedings such as turnover of property (28 U.S.C. § 157(b)(2)(E)); matters respecting the automatic stay (28 U.S.C. § 157(b)(2)(G)); determinations regarding Enterprise's lien (28 U.S.C. § 157(b)(2)(K)); and the relationship between the Debtor and its potential creditors

including Defendant, Enterprise, DMC, TRI and API (28 U.S.C. § 157(b)(2)(O)). Thus, as distinguished from *Wood*, 825 F.2d at 98, the Fort Worth Suit will be dispositive of various matters "arising in" Debtor's case.

**27.** *Denton County Elec. Coop. v. Eldorado Ranch (In Re Denton County Elec. Coop)*, 281 B.R. 876, 880–81 (Bankr.N.D.Tex.2002). *Accord Security Farms v. International Bhd. of Teamsters*, 124 F.3d 999,1009 (9th Cir.1997)("[a]bstention can exist only where there is a parallel proceeding in state court. That is, inherent in the concept of abstention is the presence of a pendent state action in favor of which the federal court must, or may, abstain."), citing *In re S.G. Phillips Constrs., Inc.*, 45 F.3d 702, 708 (2nd Cir.1995) (including as a requirement for mandatory abstention the presence of a previously commenced state action); *In re Tucson Estates*, 912 F.2d 1162, 1167 (9th Cir.1990) (recognizing as a factor for permissive abstention the presence of a related proceeding commenced in state court or other nonbankruptcy court); *Broyles v. U.S. Gypsum*, 266 B.R. 778, 783 (E.D.Tex. 2001); *Thomas v. R.J. Reynolds*, 259 B.R. 571, 576 (S.D.Miss.2001).

the Austin Suit was transferred to this court's docket. As such, even if the court were to abstain from hearing the Fort Worth Suit, when the other pendant action proceeds (i.e. the Austin Suit proceeds before this court) the parties would be right back where they started and the court faced with substantially the same issues (and parties).[28] Whether the court hears the Fort Worth Suit or the Austin Suit (and concomitantly, whether Plaintiff and Defendant trade roles with each other) seems to present a distinction without a difference. After considering the foregoing, the court concludes that Defendant has failed carry his burden with respect to the fifth prong of the mandatory abstention test.

■■■■ Finally, the court will consider whether the issues to be abstained from by this court can be timely adjudicated in an alternate forum. As with the other elements of mandatory abstention, the party seeking abstention bears the burden of establishing the element of timely adjudication in the context of remand, and a naked assertion that the matter can be timely adjudicated in the state court, without more, is insufficient to satisfy the requirement of mandatory abstention.[29] Courts discussing the timely adjudication element of mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2) have looked to the following factors: 1) backlog of the state court's calendar; 2) status of the bankruptcy proceeding; 3) complexity of issues; and 4) whether the state court proceeding would prolong the administration or liquidation of the estate.[30] The court agrees the foregoing factors are instructive, but concludes special emphasis on the status (and needs) of the bankruptcy proceeding is the key to the timing issue, at least in this case. Otherwise, "timely adjudication" is a meaningless concept in the bankruptcy context.

■■■ As discussed above, there is currently no alternate forum in which the

28. From its review of the Austin Bankruptcy Court's docket, the court notes that Defendant (or the plaintiff in the Austin Suit) and HCPC filed the Austin Motion with the Austin Bankruptcy Court before the Austin Suit was transferred to the Northern District of Texas. Because the Austin Bankruptcy Court opted to address Plaintiff's motion to transfer the Austin Suit before addressing the request for remand, the Austin Motion, as a technical matter, is now open for this court's consideration. The court is not, however, convinced it has the power to grant the relief sought in the Austin Motion. As this court understands the doctrine of remand, the doctrine requires a court to send a case back from whence it came. *Accord In re U.S. Refining & Marketing Co., Inc.,* 2000 WL 14398, 2000 U.S.App. LEXIS 219 (9th Cir.2000). In this case, the only court to which this court could remand the Austin Suit is the Austin Bankruptcy Court. As the Austin Motion speaks to remand of the Austin Suit from the Austin Bankruptcy Court to the state court from which it was removed (and, in fact, questions the propriety of the Austin Bankruptcy Court's exercise of jurisdiction over the Austin

Suit), this court doubts if it could or should now construe the Austin Motion as a request to send the Austin Suit back to the Austin Bankruptcy Court for further consideration. In making this observation, the court is not prejudging the issue. Rather, the court is simply considering some of the practical ramifications of granting the Motion and the likely delays to be created thereby.

29. *Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.,* 277 B.R. 5, 14 (S.D.N.Y.2002); *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.,* 75 F.Supp.2d 596, 605–06 (S.D.Tex.1999). *But see McCormick v. Kochar,* 1999 WL 1051776, *1, 1999 U.S. Dist. LEXIS 17833, *3 (E.D.Pa.1999) (placing burden on party opposing abstention to demonstrate case cannot be timely adjudicated in the state court).

30. *See e.g. Janazzo v. Fleetboston Fin. Corp.,* 2002 WL 54541, *4, 2002 U.S. Dist. LEXIS 451, *12 (N.D.Ill.2002); *J.D Marshall Int'l, Inc. v. Redstart, Inc.,* 74 B.R. 651, 654–55 (N.D.Ill.1987); *In re Georgou,* 157 B.R. 847, 851 (N.D.Ill.1993).

parties may resolve their dispute (other than in this court under a different case number). While, technically, the Austin Motion requests remand of the Austin Suit to the Texas state court system, this court is not in a position to grant the relief requested.[31] Rather, for there to be a pendant nonbankruptcy action in favor of which this court must abstain, Defendant must file and serve out a motion to transfer the Austin Suit back to the Austin Bankruptcy Court, and then (assuming such a motion is granted) renotice and proceed with the remand portion of the Austin Suit. Assuming the remand portion of the Austin Motion is granted (and assuming the automatic stay of § 362(a) of the Code presents no obstacle to continuation of the Austin Suit), the parties would then find themselves subject to whatever time constraints were associated with the state court's docket.

In the Motion, Defendant states that the Austin Suit is capable of timely adjudication in the Texas state court system, and that, prior to removal to Austin Bankruptcy Court, the case was proceeding to trial under the governing discovery control plan. Defendant does not, however, give any consideration to the procedural hurdles that must be cleared before the Austin Suit can be redelivered to the Texas state court system (i.e. transfer of the Austin Suit to the Austin Bankruptcy Court and then, following further proceedings, remand to the state court from which it was removed). Other than reciting prior progression in accordance with the governing discovery control plan, Defendant also fails to give any indication of how long it will take the state court to hear and resolve the Austin Suit. Although the court does not anticipate the Austin Suit (or the Fort Worth Suit for that matter) will present extraordinarily complex issues, resolution of whatever issues exist will be essential to the conduct of Debtor's chapter 11 case. Indeed, until the status of the Lease Agreement is determined, Debtor (and the creditors) will not know whether reorganization is a realistic possibility. Moreover, the court has twice had to act pursuant to § 365(d)(4) of the Code to extend Plaintiff's time to assume or reject the Lease Agreement. The timetable for dealing with the lease and the timing of Debtor's reorganization process are necessarily hostage to the dispute joined in the Fort Worth (and Austin) Suit. The rights of Enterprise, DMC, TRI and API all depend on its outcome as does any decision to assume or reject the Environmental Agreement.

Because of the importance to Debtor's chapter 11 case of the issues raised in the Fort Worth Suit, this court simply cannot abdicate its responsibility to Debtor (or Debtor's estate and creditors) by leaving these issues for resolution in a state court based on Defendants showing of the timing involved with such a course of action. As this court has not been presented with adequate proof that the Austin Suit is capable of adjudication in the Texas state court system within time frames consistent with the needs of the reorganization process, the court concludes that the sixth and final prong of the test for mandatory abstention has not been met.

In light of the foregoing, the court concludes that mandatory abstention is inapplicable in the instant case. The Motion is, therefore, DENIED insofar as it requests relief under 28 U.S.C. § 1334(c)(2).

### D. Permissive Abstention

▆ In determining whether to abstain under section 1334(c)(1), courts have developed a nonexclusive list of factors to be

---

31. *See* footnote 28, *supra*.

considered.[32] These factors have been adopted in the Northern District of Texas.[33] The factors are:

(1) The effect or lack thereof on the efficient administration of the estate if a court recommends abstention;

(2) The extent to which state law issues predominate over bankruptcy issues;

(3) The difficulty or unsettled nature of the applicable state law;

(4) The presence of a related proceeding commenced in state court or other nonbankruptcy court;

(5) The jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6) The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) The substance rather than form of an asserted "core" proceeding;

(8) The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) The burden on the bankruptcy court's docket;

(10) The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) The existence of a right to a jury trial;

(12) The presence in the proceeding of nondebtor parties;

(13) Comity; and

(14) The possibility of prejudice to other parties in the action.

■■■■■ In determining whether permissive abstention is appropriate, courts refer to "principles developed under the judicial abstention doctrines."[34] Those doctrines establish that federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them."[35] On the other hand, the text of section 1334(c)(1) "demonstrates the intent of Congress that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case."[36]

■■■■ The court considers whether permissive abstention is appropriate with the foregoing in mind. As discussed above, there are unanswered questions with respect to how quickly the Austin Suit will be heard if this court abstains from hearing the Fort Worth Suit. Because resolution of the issues raised in the Fort Worth and Austin Suits is so central to Debtor's chapter 11 case, any delay could have a

---

**32.** *See, e.g., In re Chi., Milwaukee, St. Paul & Pac. R.R. Co.,* 6 F.3d 1184, 1189 (7th Cir. 1993); *In re Tucson Estates,* 912 F.2d 1162, 1166–67 (9th Cir.1990); *In re Republic Reader's Service, Inc.,* 81 B.R. 422, 429 (Bankr. S.D.Tex.1987). *See also Crawford v. Primary Care Group,* 2003 WL 1403208, 2003 U.S. Dist. LEXIS 4485 (E.D.Tex.2003) (adding "comity" and "possibility of prejudice to other parties" as additional factors to be considered).

**33.** *See AFD Fund v. Olajuwon (In re Olajuwon Interests, Inc.),* 2003 WL 124469, 2003 U.S. Dist. LEXIS 365 (N.D.Tex.2003); *Flores v. Baldwin,* 2002 WL 1118504, at *6, 2002 U.S.

Dist. LEXIS 9539, at *19–20 (N.D.Tex.2002); *Hester v. Coho Energy, Inc. (In re Coho Energy, Inc.),* 2002 WL 523948, at *7, 2002 U.S. Dist. LEXIS 5862, at *19–20 (N.D.Tex.2002).

**34.** *In re Pan American Corp.,* 950 F.2d 839, 846 (2d Cir.1991).

**35.** *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

**36.** *In re Gober,* 100 F.3d 1195, 1206 (5th Cir.1996) (quoting *In re Wood,* 825 F.2d 90, 93 (5th Cir.1987)).

disastrous effect on Debtor's ability to re-organize. This court is prepared to hear these matters as soon as the parties can be ready for trial. While the court understands that Defendant (in his role as plaintiff in the Austin Suit) has demanded a jury with respect to the Austin Suit, no such demand has been made in the Fort Worth Suit. If such a demand is made in the Fort Worth Suit, the court will cross that bridge at the appropriate time (though the court's conclusions regarding the centrality to the reorganization process of the issues presented suggests that the chapter 11 case and the dispute between the parties would be best addressed in the same court). Since there is no state action in favor of which this court could abstain should it so wish, comity is not a factor. Finally, the court believes itself capable of providing a fair and impartial hearing on the Fort Worth Suit, and that none of the parties would be unduly prejudiced should these matters proceed in the Northern District of Texas. While not all of the permissive abstention factors are implicated in the court's consideration of the Motion, the court feels that those that are implicated, on balance, weigh in favor of retaining jurisdiction over the Fort Worth Suit.[37] The Motion is, therefore, DENIED insofar as it requests relief under 28 U.S.C. § 1334(c)(1).

## IV. CONCLUSION

As set forth herein, the Motion is DENIED. The parties shall, as soon as practicable, schedule a status conference at which the court will consider consolidation of the Fort Worth and Austin Suits, the timing of the trial(s) on the foregoing and any other procedural matters the parties wish to have considered.

It is so ORDERED.

---

37. Although, as a technical matter, the court is not faced with a motion for abstention in the Austin Suit, the analysis with respect to any such motion would presumably be the same.