**In re EZ PAY SERVICES, INC.,**

**Franklyn Alexander, DDS,
Inc., et al., Plaintiffs,**

**v.**

**Alternative Debt Portfolios, LLC, and
Alternative Debt Portfolios, LP.,
Defendants.**

**Bankruptcy No. 3:06–bk–02474–PMG.
Adversary No. 3:07–ap–187–PMG.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 13, 2007.

James A. Fisher, Fisher Holmes & turner, Shannon L.K. Welch, Dallas, TX, for Plaintiffs.

Roy S. Kobert, Orlando, FL, for Defendants.

### ORDER ON PLAINTIFFS' MOTION TO ABSTAIN

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider the Plaintiffs' Motion to Abstain.

Thirteen Plaintiffs initially commenced this action by filing a Complaint against the Defendants, Alternative Debt Portfolios, LLC, and Alternative Debt Portfolios, L.P. (collectively, ADP), in the State Court in Texas. The State Court action was subsequently removed to the Bankruptcy Court in Texas, and transferred by the Texas Bankruptcy Court to this Court. In the Motion currently at issue, the Plaintiffs assert that this Court is required to abstain from hearing the proceeding pursuant to the mandatory abstention provisions of 28 U.S.C. § 1334(c)(2).

### Background

The Debtor, EZ Pay Services, Inc., was engaged in the business of contracting with dentists for the right to collect certain of the dentists' patient accounts, in exchange for discount fees and other fees specified in the contracts.

The Plaintiffs are dentists who had contracted with the Debtor. According to the Plaintiffs, their contracts generally provided that (1) the Debtor would have a direct relationship with the Plaintiffs' patients for

the collection of amounts due; (2) the Plaintiffs would make an initial payment to the Debtor for each patient enrolled in the program, followed by a monthly fee during the remainder of the contract; and (3) the Debtor would pay the Plaintiffs 90% to 94% of the amounts owed by the patients, regardless of the amounts actually collected by the Debtor. (Doc. 1, Exhibit 4, Plaintiffs' Original Petition, p. 5).

In June of 2005, the Debtor, as Seller, entered into a Purchase Agreement with Alternative Debt Portfolios, L.P. (Main Case, Doc. 45, Exhibit B). Pursuant to the Agreement, the Debtor agreed to sell certain of its Contracts, as broadly defined in the Agreement, to ADP. Generally, the Purchase Agreement provided that the price for each Contract would be set forth in a separate Addendum, that delivery of the purchase price under the Agreement would constitute payment in full for the Debtor's interest in the Contracts, that the Contracts purchased would become the sole property of ADP, and that all payments owed by the patients under the purchased Contracts would thereafter be due to ADP.

On June 29, 2005, in conjunction with the Purchase Agreement with ADP, the Debtor executed a separate Provider Payment Guarantee, pursuant to which it agreed to "continue forwarding all payments due to Medical Providers [the dentists] and/or to settle balance in full with all Medical Providers as per the terms of the E–Z Pay Medical Provider Agreements." (Main Case, Doc. 45, Exhibit B).

The Plaintiffs did not receive any payments under their contracts with the Debtor after June of 2006. (Plaintiffs' Original Petition, p. 6).

On August 4, 2006, an involuntary petition under Chapter 11 was filed against the Debtor in the Bankruptcy Court in Nevada.

On August 16, 2006, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the Middle District of Florida.

On January 25, 2007, the Plaintiffs filed a Complaint against ADP in the State Court in Dallas County, Texas. (Doc. 1, Exhibit 4). The focus of the Plaintiffs' Complaint is the Purchase Agreement between the Debtor and ADP. The Debtor is not named as a defendant in the action.

In the Complaint, the Plaintiffs allege that ADP "paid only 78 cents or less to E–Z Pay for each dollar of face value for each account, while E–Z Pay remained obligated [to the dentists] to pay 90 to 94 cents for each dollar of face value for each account." According to the Plaintiffs, when ADP purchased the Contracts, it "knew of E–Z Pay's obligation to Plaintiffs, understood that this arrangement made no mathematical sense, and knew, or should have known, that its 'purchase' would ultimately cause the demise of E–Z Pay." Consequently, the Plaintiffs seek damages against ADP based on ADP's tortious interference with the Plaintiffs' contracts with the Debtor.

On March 22, 2007, ADP removed the Plaintiffs' State Court action to the Bankruptcy Court in Texas. (Doc. 29, Exhibit 2). In the Notice of Removal, ADP asserted that the Debtor is a necessary and indispensable party to the Plaintiffs' lawsuit, that the validity of the Purchase Agreement between the Debtor and ADP is the subject of a separate adversary proceeding brought by the Chapter 7 Trustee, and that the State Court action is "related to" the Debtor's bankruptcy case within the meaning of 28 U.S.C. § 1334(b). ADP asserted, therefore, that the action was properly removable pursuant to 28 U.S.C. § 1452.

On May 24, 2007, the Bankruptcy Court in Texas entered an Order transferring the Plaintiffs' action to the United State District Court for the Middle District of Florida, pursuant to a Motion to Transfer Venue filed by ADP. (Docs.7, 18). On July 30, 2007, the District Court transferred the action to the Bankruptcy Court for the Middle District of Florida. (Doc. 33).

In the Motion to Abstain currently before the Court, the Plaintiffs assert that this Court is required to abstain from hearing this matter pursuant to 28 U.S.C. § 1334(c)(2), because (1) there is no independent basis for Bankruptcy Court jurisdiction other than § 1334(b) of title 28, (2) the Plaintiffs' claims are not core proceedings, (3) the claim is based on a State Law cause of action; and (4) the action was commenced and can be timely adjudicated in the State Court. (Docs.11, 30).

In response, ADP contends that the mandatory abstention provisions of § 1334(c)(2) do not apply to this case, because the Plaintiffs' claim for tortious interference is integral to the administration of the Debtor's Chapter 7 estate, and is therefore a core proceeding. Additionally, ADP contends that 28 U.S.C. § 1367(a) provides this Court with an independent basis for jurisdiction, since the Plaintiffs' claim arises from the same nucleus of operative fact as the Trustee's claims against ADP. (Doc. 16).

## Discussion

The Plaintiffs filed the Motion to Abstain pursuant to the mandatory abstention provisions of 28 U.S.C. § 1334(c)(2). Section 1334(c)(2) provides:

**28 USC § 1334. Bankruptcy cases and proceedings**

. . .

(c)(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

Under this section, courts must abstain from hearing a state law claim if (1) the claim has no independent basis for federal jurisdiction other than § 1334(b); (2) the claim is a non-core proceeding; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court. *In re United Petroleum Group, Inc.*, 311 B.R. 307, 311 (Bankr.S.D.Fla.2004). See also *In re TXNB Internal Case*, 483 F.3d 292, 300 (5th Cir.2007).

"The party requesting abstention must prove the existence of each element by a preponderance of the evidence." *In re Lorax Corp.*, 295 B.R. 83, 90 (Bankr. N.D.Tex.2003). "A party is not entitled to mandatory abstention if it fails to prove any one of the statutory requirements." *In re WorldCom, Inc. Securities Litigation*, 293 B.R. 308, 331 (S.D.N.Y.2003).

In this case, the Court finds that the Motion to Abstain should be denied because it does not appear by a preponderance of the evidence that the Plaintiffs' tortious interference claim is a non-core proceeding.

The Plaintiffs' Complaint is admittedly a pleading that was "carefully crafted" to avoid the assertion of any cause of action belonging to the Chapter 7 Trustee. (Transcript, p. 35). Despite the strategic decision to frame the Complaint as an

action for tortious interference against ADP, however, it is clear that the Plaintiffs are seeking a determination that the Purchase Agreement between the Debtor and ADP was improper and should effectively be set aside.

It is equally clear that the Trustee of the Debtor's Chapter 7 estate is simultaneously seeking to avoid the same Purchase Agreement entered by the Debtor and ADP. The Trustee has filed a separate adversary proceeding against ADP, based on the same allegedly wrongful conduct as that asserted by the Plaintiffs. In pursuing his claims, of course, the Trustee is seeking to avoid the transaction and recover the transferred assets for the benefit of the bankruptcy estate as a whole, and not for the benefit of any particular creditor.

The Plaintiffs' tortious interference claim is based on the same transaction and conduct, and seeks essentially the same legal remedy against ADP, as the Trustee's action to set aside a voidable transfer and to recover the transferred assets for the estate.

The facts and documents upon which the Court relies to support this conclusion are as follows:

### A. The Plaintiffs' Contracts with the Debtor

All of the Plaintiffs entered into contracts with the Debtor to provide financing services to the Plaintiffs' patients. According to the Plaintiffs, the Contracts generally provided that (1) the Debtor would have a direct relationship with the Plaintiffs' patients for the collection of amounts due; (2) the Plaintiffs would make an initial payment to the Debtor for each patient enrolled in the program, followed by a monthly fee during the remainder of the Contract; and (3) the Debtor would pay the Plaintiffs between 90% and 94% of the amounts owed by the patients,

regardless of the amounts actually collected by the Debtor. (Plaintiffs' Original Petition, p. 5).

Copies of the Plaintiffs' Contracts with the Debtor are attached to their Proofs of Claim filed in the Debtor's Chapter 7 case. (ADP's Exhibit 1). The Contracts are not identical. They are variably entitled "E–Z Pay Dental Alpha & Omega Contract," "E–Z Pay Services, Inc Doctor Client Contract," "E–Z Pay Services, Inc Doctor Contract," and "E–Z Pay Services, Inc Contract," and were prepared and executed in several differing formats.

Generally, however, the Contracts provided that the individual patient accounts belonged to the Debtor once the patients were enrolled in accordance with the agreement. Examples of the contract provisions evidencing the transfer of ownership to the Debtor include:

1. "E–Z Pay Dental owns each account submitted." (E–Z Pay Dental Alpha & Omega Contract, ¶ 1.10).

2. "The client [the dentist] is hereby assigning selected patient accounts, as individually authorized by the client's patients, to E–Z PAY SERVICES, INC, for the purpose of collecting patient balances due to the client Once assigned, the collectable balance of the patient account becomes the property of E–Z PAY SERVICES, INC." (E–Z Pay Services, Inc Doctor Client Contract, and E–Z Pay Services, Inc Contract, ¶ 2.4).

3. "Because E–Z PAY SERVICES, INC guarantees patient payments to the doctor without recourse, all patient contracts are considered the property of E–Z PAY SERVICES, INC." (E–Z Pay Services, Inc Doctor Client Contract, and E–Z Pay Services, Inc Contract, ¶ 4.3).

4. "Patient accounts are issued to the patients by E–Z Pay Services, Inc.

and will not result in recourse to E–Z Pay Dental offices. Standard fraud and conveyance laws apply, which if determined to exist would result in full recourse plus penalty fees to the provider." (E–Z Pay Services, Inc Doctor Contract, ¶ 1.4).

5. "Effective immediately, when a doctor cancels with E–Z Pay Services, Inc., he cannot take reassignment of his accounts back." (E–Z Pay Contract Amendment, January 2006, ¶ 1).

Consistent with these provisions, the Plaintiffs do not assert in their tortious interference claim that they retained an ownership interest in the enrolled patient accounts after the Contracts were entered. (Transcript, p. 36). For purposes of the Motion to Abstain, however, the provisions are significant because they support the Trustee's claim that the accounts constitute property of the bankruptcy estate. The provisions appear to have created an assignment of the Plaintiffs' patient accounts from the dentists to the Debtor.

**B. The Plaintiffs' action against ADP**

The Plaintiffs filed a Complaint against ADP in the State Court in Texas on January 25, 2007, more than five months after the Debtor filed its Chapter 7 petition. The Complaint contains a single count for tortious interference with existing contracts. The Plaintiffs concede that the Complaint was "carefully crafted" to plead only this one legal theory, a theory that was not asserted by the Chapter 7 Trustee. (Transcript, p. 35).

■ To prevail on a cause of action for tortious interference under Texas law, the Plaintiffs must show: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was the proximate cause of Plaintiffs' damages; and (4) actual damage or

loss. *Dunn v. Calahan*, 2007 WL 2462040, at *2 (Tex.App.-Austin); *Richardson–Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 474 (Tex.App.Houston 2006).

With respect to the first element, the Plaintiffs allege that they separately entered into contracts with the Debtor whereby the Plaintiffs would pay certain fees to the Debtor, the Debtor would collect the amounts owed by the Plaintiffs' patients for dental services provided by the Plaintiffs, and the Debtor would pay the Plaintiffs 90% to 94% of the total amount owed by the patients to the Plaintiffs. The existence of the contracts between the Debtor and the Plaintiffs does not appear disputed.

■ With respect to the second element, a willful and intentional act of interference, the Plaintiffs must show that ADP knowingly induced the Debtor to breach its obligations under the contracts. There must be some identifiable act by ADP, together with the knowledge or belief that the act would result in an interference with the Plaintiffs' contracts. *Dunn v. Calahan*, 2007 WL 2462040, at *3.

The gravamen of the Plaintiffs' claim as to this second element appears on pages 6 and 7 of their Complaint.

> *Plaintiffs have now learned that ADP claims to have "purchased" the contracts between E–Z Pay and Plaintiffs' patients. ADP claims to own outright, or to have an assigned ownership interest in the billing accounts that underlie the contracts between Plaintiffs and E–Z Pay. It is alleged by ADP that, starting in June of 2005, (with large monthly payments), ADP "purchased" the right to collect the money drawn from the patient bank accounts. Since this "purchase," ADP, through Duvera Billing Services, has been debiting Plaintiffs' patients' local bank accounts. ADP,*

however, paid only 78 cents or less to E–Z Pay for each dollar of face value for each account, while E–Z Pay remained obligated to pay 90 to 94 cents for each dollar of face value for each account. For obvious reasons, this is impossible. Under the E–Z Pay contracts, E–Z Pay ostensibly retained all of the amounts collected, and even if collections fell below ninety-four percent (the amount owed to Plaintiffs), E–Z Pay could make up for that deficit by assessing penalties and interest against the patients. *But if E–Z Pay sold the right to debit patient accounts to ADP, E–Z Pay is by definition losing money on every transaction, and could never survive. When ADP made this "purchase," ADP knew of E–Z Pay's obligation to Plaintiffs, understood that this arrangement made no mathematical sense, and knew, or should have known, that its "purchase" would ultimately cause the demise of E–Z Pay. And, as a direct result of ADP's actions, E–Z Pay is now in bankruptcy.*

(Plaintiffs' Original Petition, pp. 6–7)(Emphasis supplied).

To establish the second element of their cause of action for tortious interference under Texas law, therefore, the Plaintiffs are seeking to show that ADP "purchased" their patient accounts from the Debtor, and that the terms of the purchase and sale were so unfavorable to the Debtor that they resulted in the Debtor's breach of its contracts with the Plaintiffs. The "purchase" alleged by the Plaintiffs is documented by the written Purchase Agreement entered in June of 2005, pursuant to which the Debtor agreed to sell certain of its contracts to ADP.

Given the allegations contained in the Complaint, the Plaintiffs' evidence in the tortious interference proceeding will of necessity focus on the specific terms of the Purchase Agreement, and the amounts paid by ADP under the Agreement as consideration for the accounts.

■ Finally, as the third and fourth elements of their tortious interference claim, the Plaintiffs must establish that they suffered actual damages or losses as a result of ADP's conduct. Under Texas law, the measure of damages in a tortious interference action "is the same as for breach of contract, i.e. to put the plaintiff in the same economic position as if the contract had been fully performed." *Centre Equities, Inc. v. Tingley*, 106 S.W.3d 143, 154 (Tex.App.-Austin 2003); *Barker v. Jumper*, 2001 WL 253853, at *2 (Tex.App.-Dallas).

To prove their damages in this case, therefore, the Plaintiffs must establish the losses that they suffered as a result of the Debtor's breach of the various "doctor client contracts." The losses that the Plaintiffs suffered from the Debtor's breach, of course, are calculated in terms of the amounts owed to them on their patient accounts.

Accordingly, in their tortious interference action, the Plaintiffs are seeking to prove that they entered into various "doctor client contracts" with the Debtor, that ADP "purchased" the contracts on terms that were certain to cause the Debtor to fail and therefore breach the contracts, and that they have been damaged in the amount owed to them on the accounts underlying the contracts.

### C. The Trustee's action against ADP

By far, the most valuable asset claimed by the Trustee for the benefit of the bankruptcy estate is his right to recover certain contract receivables from ADP and other parties. On the Debtor's Schedule of Assets, for example, it listed "bad debt collections" in the approximate amount of $4,669,188.46, contract receivables due

from a collection agency in an unknown amount, and contract receivables due from ADP "estimated to be in excess of $20 million." (Main Case, Doc. 31). The contract receivables scheduled by the Debtor relate to the patient accounts acquired by the Debtor pursuant to its contracts with the dentists.

As indicated above, the Trustee has filed a separate adversary proceeding against ADP in the bankruptcy case. (Adv. Pro.07–19). In the adversary proceeding, the Trustee is seeking a determination that he is entitled to the patient accounts that were acquired by the Debtor from the dentists, and subsequently sold to ADP under the Purchase Agreement.

In the proceeding, the Trustee alleges that the Debtor's transaction with ADP was not a true sale of the contracts to ADP, and that ADP misrepresented its intention regarding the Agreement. (Adv. Pro.07–19, Doc. 1, ¶ 16). Alternatively, the Trustee alleges that the Debtor's business practices constituted a Ponzi scheme, and that ADP participated and conspired in the scheme. (Adv.Pro.07–19, Doc. 1, ¶ 25).

The Trustee's Complaint against ADP contains nine Counts, including an action to determine the validity, priority, and extent of a lien, an action to recover fraudulent transfers pursuant to § 544, § 548, and § 550 of the Bankruptcy Code, an action for usurpation of corporate opportunities, an action for conversion of accounts, and an action for turnover pursuant to § 542 of the Bankruptcy Code.

In the Complaint, the Trustee alleges in part:

> While ADP purportedly advanced $16 million to EZ Pay, it did so at the extraction of 28% of the amounts that were to be recovered by EZ Pay with which to pay the physicians. Thus, on its face and from the conducting of even a minimum amount of due diligence, ADP

knew or should have known that its advancing funds was nothing more than the furtherance of the Ponzi scheme, and ADP sought to profit from EZ Pay's fraudulent scheme through the execution of the purported "Purchase Agreement" and its terms and provisions, as well as extracting a 28% fee from the monies that were to be collected by EZ Pay from the patients. Consequently, on its face, this business model would be even more impossible to operate profitably or at a break even level.

(Adv.Pro.07–19, Doc. 1, ¶ 25).

To prevail on the Complaint, the Trustee must establish that the Debtor had initially acquired an interest in the patient financing contracts pursuant to its agreements with the dentists, and that the contracts may be recovered from ADP because they were transferred as "part of an unlawful fraudulent scheme or Ponzi scheme." (Adv.Pro.07–19, Doc. 1, ¶ 37). Consequently, the Trustee seeks the entry of a Judgment avoiding the Debtor's transaction with ADP, and requiring ADP to turn over to the Trustee "all EZ Pay accounts and all funds paid to ADP from EZ Pay Patient Contracts." (Adv.Pro.07–19, Doc. 1, p.13).

### Application

The Plaintiffs' tortious interference action and the Trustee's adversary proceeding involve the same contracts between the dentists and the Debtor, the same Purchase Agreement between the Debtor and ADP, and the same allegedly wrongful conduct by ADP. Specifically, the Plaintiffs and the Trustee both allege that ADP paid the Debtor less for the patient accounts under the Purchase Agreement than the Debtor owed to the dentists on the same accounts, with the knowledge that the enterprise would inevitably collapse because of the shortfall.

The Plaintiffs contend that they are only seeking money damages from ADP, and that "any money will do. It doesn't have to be the income stream from any patient contracts or any particular account." (Transcript, p. 38). The damages that the Plaintiffs hope to recover from ADP on their tortious interference theory, however, are measured by the amount owed to them on the patient contracts. The Trustee is seeking turnover of these patient accounts for the benefit of the estate.

The Court has considered the Plaintiffs' contracts with the Debtor, the Plaintiffs' action against ADP, and the Trustee's action against ADP, and concludes that it has not been established that the tortious interference action is not a core proceeding.

■ Section 157(b) of title 28 governs the determination of whether a particular proceeding is a "core" proceeding. Section 157(b) provides in part:

**28 U.S.C. § 157. Procedures**

. . .

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

. . .

(E) orders to turn over property of the estate;

. . .

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

. . .

(K) determinations of the validity, extent, or priority of liens;

. . .

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

28 U.S.C. § 157(b). This non-exhaustive list of core proceedings may be interpreted broadly, close to or congruent with the constitutional limits of the bankruptcy court's jurisdiction. *In re Adelphia Communications Corp.,* 307 B.R. 404, 416 (Bkrtcy.S.D.N.Y.2004).

The Trustee's action against ADP includes a count for the turnover of property of the estate, a count to avoid and recover fraudulent conveyances, and a count to determine the validity and extent of a lien, each of which is expressly listed as a core proceeding. Additionally, the Trustee is generally seeking to recover the patient accounts as the primary asset of the Debtor's estate, which falls within the scope of subsection (A) and subsection (O) of § 157(b) as actions affecting the administration of the estate or the liquidation of assets of the estate.

The Trustee's action against ADP is a core proceeding within the meaning of § 157(b)(2) of title 28.

For purposes of evaluating the Motion to Abstain, therefore, the next issue is whether the Plaintiffs' tortious interference action is also a core proceeding.

The Plaintiffs cited the decision of the Eleventh Circuit Court of Appeals in *In re*

*Electric Machinery Enterprises, Inc.*, 479 F.3d 791 (11th Cir.2007), for the proposition that core proceedings consist only of (1) proceedings that involve a right created by the federal bankruptcy laws, or (2) proceedings that would arise only in bankruptcy. (Transcript, p. 39).

The Eleventh Circuit's standard for determining whether a proceeding is "core" is not disputed. In applying the standard to the unique circumstances of this case, however, the Court is persuaded by a decision of the Fourth Circuit Court of Appeals that the Eleventh Circuit distinguished on its facts.

In *In re Johnson*, 960 F.2d 396 (4th Cir.1992), the Court previously had determined that certain funds possessed by the debtor were held in a constructive trust for investors who had been defrauded in a pyramid scheme. The issue before the Fourth Circuit was whether an investor's entitlement to a portion of the funds held in the constructive trust was a core matter. *In re Johnson*, 960 F.2d at 401.

After considering the "broadly inclusive language" of § 157(b)(2) and the broad scope of property of the estate under § 541, the Fourth Circuit concluded that "core proceedings" may encompass a wide range of proceedings. *Id.* at 401. The Court found that the initial determination that the funds were held in a constructive trust was a core proceeding. Consequently, the Court found that the determination as to the proper distribution of those funds was also a core proceeding, because it was "intimately tied to the traditional bankruptcy functions and estate" and, therefore, within the clear jurisdiction of the bankruptcy court. *Id.* at 402.

The Court is also persuaded by the reasoning in *In re CRD Sales and Leasing, Inc.*, 231 B.R. 214 (Bankr.D.Vt.1999). In *CRD Sales*, a creditor had filed a prepetition foreclosure action against the II

debtor and other parties. The debtor subsequently filed a bankruptcy case, and removed the foreclosure action to the bankruptcy court. The debtor also sued the foreclosing creditor for equitable subordination, among other claims. The creditor filed a motion for mandatory abstention with respect to the foreclosure action. *In re CRD Sales*, 231 B.R. at 216–17.

The Bankruptcy Court found that the foreclosure action was based on the same facts as the debtor's equitable subordination claim. *Id.* at 218.

> We find that we must hear the foreclosure action as a core matter under 28 U.S.C. §§ 157(b)(K) & (O) because the foreclosure proceeding, while based on state law, is so intertwined with the undoubtedly core subordination claim and the request to determine the validity and extent of Bank's lien.
>
> In so doing, we do not ignore the fact that foreclosure actions are usually deemed non-core. When inextricably intertwined with the equitable subordination claim, however, a core claim that must be heard here, we think it is safe to say the entire proceeding is core. "When a proceeding is in part core and in part non-core related, we may determine the entire proceeding is core when the core aspect predominates and the non-core related aspect, by comparison is insignificant." *In re STN Enterprises*, 73 B.R. 470, 483 (Bkrtcy D. Vt.1987).

*Id.* at 219–20. The Court denied the creditor's motion for mandatory abstention, for the reason that the debtor's core proceeding dominated the creditor's state law foreclosure action. *Id.* at 220.

Similarly, under the unique circumstances of the case before the Court, the Plaintiffs' Motion to Abstain should be denied. As shown above, the Trustee's ad-

versary proceeding and the Plaintiffs' tortious interference action are based on the same facts, transactions, and allegedly wrongful conduct by ADP. Given the overlapping allegations and theories for relief, the Court finds that the Plaintiffs' tortious interference action is inextricably intertwined with the Trustee's claims against ADP. The Trustee's action is a core proceeding based in part on specific sections or provisions of the Bankruptcy Code, and the Plaintiffs' action is inextricably intertwined with a core proceeding.

Finally, based on similar reasoning, ADP contends that abstention is not appropriate in this case because the Court possesses supplemental jurisdiction to hear the Plaintiffs' claim under 28 U.S.C. 1367(a). Section 1367(a) provides:

> **§ 1367. Supplemental jurisdiction**
>
> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution....

28 U.S.C. § 1367(a). Although the section addresses jurisdiction over closely related claims, it is not clear that this provision for supplemental jurisdiction extends to the Bankruptcy Court. *In re TXNB Internal Case*, 483 F.3d 292, 300 (5th Cir.2007)("Bankruptcy courts may not exercise supplemental jurisdiction."); *In re Johnston*, 2007 WL 1166017, at *6 (Bankr.N.D.W.Va.)("Congress has not extended § 1367's jurisdictional grant to the bankruptcy courts."); *In re Romar International Georgia, Inc.*, 198 B.R. 401, 407 (Bankr.M.D.Ga.1996).

In view of the statute's questionable applicability, the Court does not rely on § 1367(a) in determining that the Plaintiffs' Motion to Abstain should be denied. Instead, the Court's decision to deny the Motion for mandatory abstention is based on the Plaintiffs' failure to satisfy their burden of proof under § 1334(c)(2).

### Conclusion

The Plaintiffs initially commenced a tortious interference action against ADP, a non-debtor, in the State Court in Texas. The State Court action was removed and transferred to this Court. In the Motion currently at issue, the Plaintiffs assert that the Court is required to abstain from hearing the action pursuant to the mandatory abstention provisions of 28 U.S.C. § 1334(c)(2).

The Plaintiffs have not satisfied the burden of proving all of the elements necessary for mandatory abstention under § 1334(c)(2).

In reaching this determination, the Court considered the Plaintiffs' Contracts with the Debtor, in which it appears that the Plaintiffs assigned certain enrolled patient accounts to the Debtor. The Debtor subsequently sold the patient accounts to ADP pursuant to a written Purchase Agreement.

The Court also considered the Chapter 7 Trustee's adversary proceeding against ADP, in which the Trustee is seeking to recover the patient accounts as the primary asset of the bankruptcy estate. In the proceeding, the Trustee alleges that ADP's purchase of the patient accounts from the Debtor was part of a fraudulent scheme with no ability to succeed. The Trustee's action is a core proceeding pursuant to at least five separate categories of proceedings listed in 28 U.S.C. § 157(b)(2).

Finally, the Court considered the Plaintiffs' tortious interference action against

ADP. The Plaintiffs' Complaint is based on the same facts and the same Purchase Agreement as the Trustee's action against ADP. Further, the Plaintiffs' Complaint and the Trustee's action allege the same wrongful conduct by ADP in remarkably similar terms.

Despite the Plaintiffs' strategic drafting of the State Court Complaint, therefore, the Court finds that their tortious interference action is inextricably intertwined with the Trustee's core proceeding against ADP. Consequently, the Plaintiffs did not satisfy the burden of showing that the tortious interference action is a non-core proceeding, as required by 28 U.S.C. § 1334(c)(2). The Motion to Abstain should be denied.

Accordingly:

**IT IS ORDERED** that the Plaintiffs' Motion to Abstain is denied.